[Civ. No. 6788. Fifth Dist. Aug. 5, 1983.]

CALIFORNIA TEACHERS' ASSOCIATION et al.,
Plaintiffs and Respondents, v.
GOVERNING BOARD OF GUSTINE UNIFIED SCHOOL
DISTRICT et al., Defendants and Appellants.

736

**COUNSEL**

Atkinson, Andelson, Loya, Ruud & Romo and Paul M. Loya for Defendants and Appellants.

Tuttle & Tuttle, Ernest H. Tuttle III and Kay M. Tuttle for Plaintiffs and Respondents.

**OPINION**

**HAMLIN, J.**—The Governing Board of Gustine Unified School District and the Gustine Unified School District (District) have appealed from a judgment granting a peremptory writ of mandate and granting declaratory relief in favor of California Teachers' Association (CTA) and A. Charles Wilson (Wilson). The writ of mandate directs District to pay to Wilson, a

certificated teacher, "differential sick-leave salary" and health benefits during five school months of the 1980-1981 school year when he did not work because of a back injury. "Differential sick-leave salary" means the absent teacher is paid the difference between his salary and the pay received by the substitute teacher who replaces him during his absence and is referred to as "differential pay." "Health benefits" refers to the teacher's entitlement under the applicable collective bargaining agreement to District payment of health plan premiums.

## FACTS

The facts in this case are not in dispute. Wilson was a certificated, tenured teacher employed by District for many years prior to the 1979-1980 school year. In 1977, Wilson sustained a work-related back injury which required him to undergo back surgery. As a further result of this injury, Wilson was unable to work for approximately 71 school days during the 1979-1980 school year. During that school year, Wilson received 10 days of paid sick leave pursuant to Education Code section 44978.[1] For the remaining days he was absent, Wilson received differential pay pursuant to the provisions of section 44977.

Because of the severity of Wilson's injury, District commenced termination proceedings against him on the basis of disability during the 1979-1980 school year. However, upon Wilson's assurance that he would either be physically able to return to work during the 1980-1981 school year or would take a disability retirement, District dropped the termination proceedings. In the spring of 1980, Wilson signed a contract to teach for District during the 1980-1981 school year. However, at the beginning of the 1980-1981 school year, Wilson was still disabled by his back injury and was unable to return to work. He did not report to work on the first day of the 1980-1981 school year nor did he work at all for District during that school year.

As a result, District notified Wilson by letter dated September 25, 1980, that all moneys and benefits provided by District were thereby discontinued. The letter advised Wilson that the five-month extended sick leave provision had expired and consequently his entitlement to District health benefits had also terminated. District also informed him his contract for 1980-1981 was not valid because of his failure to report to work. Thereafter Wilson paid to District the amount of the premiums required to continue his health insurance.

---

[1]All statutory references are to the Education Code unless otherwise specified.

DISCUSSION

I. *Is a certificated teacher who has received differential pay pursuant to section 44977 during one school year entitled to benefits under that section for five school months in a succeeding school year when the teacher is unable to return to work due to the same illness or injury?*

Resolution of this important issue obviously requires us to interpret section 44977 and related provisions of the Education Code.

■ In construing a statute, the fundamental rule is that the appellate court should ascertain the intent of the Legislature so as to effectuate the purpose of the law. (*Palos Verdes Faculty Assn.* v. *Palos Verdes Peninsula Unified Sch. Dist.* (1978) 21 Cal.3d 650, 658 [147 Cal.Rptr. 359, 580 P.2d 1155].) To determine such intent the court first looks to the words themselves for the answer. (*Ibid.*) ■ The court is required to give effect to statutes according to the usual, ordinary import of the language employed in framing them. (*Id.,* at pp. 658-659.) ■ The various parts of a statutory enactment must be harmonized by considering the particular clause or section in the context of the statutory framework as a whole. (*Id.,* at p. 659.)

The pertinent parts of the statutes which provide benefits for teachers who are absent from their duties on account of illness or accident, Education Code sections 44977 and 44978, read: "When a person employed in a position requiring certification qualifications is absent from his duties on account of illness or accident for a period of five school months or less, whether or not the absence arises out of or in the course of the employment of the employee, the amount deducted from the salary due him for any month in which the absence occurs shall not exceed the sum which is actually paid a substitute employee employed to fill his position during his absence, or, if no substitute employee was employed, the amount which would have been paid to the substitute had he been employed. The school district shall make every reasonable effort to secure the services of a substitute employee.

"· · · · · · · · · · · · · · · · · · · · · · ·

"When a person employed in a position requiring certification qualifications is absent from his duties on account of illness for a period of more than five school months, or when a person is absent from his duties for a cause other than illness, the amount deducted from the salary due him for the month in which the absence occurs shall be determined according to the rules and regulations established by the governing board of the district. Such

rules and regulations shall not conflict with rules and regulations of the State Board of Education.

"Nothing in this section shall be construed so as to deprive any district, city, or city and county of the right to make any reasonable rule for the regulation of accident or sick leave or cumulative accident or sick leave without loss of salary for persons acquiring certification qualifications.

". . . . . . . . . . . . . . . . . . . . . . ."
(Ed. Code, § 44977.)

"Every certificated employee employed five days a week by a school district shall be entitled to 10 days' leave of absence for illness or injury and such additional days in addition thereto as the governing board may allow for illness or injury, exclusive of all days he is not required to render service to the district, with full pay for a school year of service. . . . Pay for any day of such absence shall be the same as the pay which would have been received had the employee served during the day. Credit for leave of absence need not be accrued prior to taking such leave by the employee and such leave of absence may be taken at any time during the school year. If such employee does not take the full amount of leave allowed in any school year under this section the amount not taken shall be accumulated from year to year with such additional days as the governing board may allow.

". . . . . . . . . . . . . . . . . . . . . . ."
(Ed. Code, § 44978.)

Section 44977 is ambiguous in failing to specify whether the illness or accident contemplated by the Legislature is one illness or accident disabling the teacher for a period of five school months or less or a combination of illnesses and accidents resulting in the specified period of disability. Additionally, the statute is unclear whether the benefits are available once in the teacher's career—i.e., the teacher is limited to one extended period of disability during which he can draw differential pay—or whether the five-school-month period is automatically renewed every school year or only by some other intervening event, such as the onset of a different illness or accident, between the annual and lifetime extremes.

The same ambiguities existed in the original enactment of School Code section 5.750 (Stats. 1931, ch. 337, § 1, p. 856.) This was the first provision in the law of California for differential pay to certificated teachers who were absent on account of illness.

■ Respondents contend a teacher who is absent from his duties because of *an* illness for a period of five school months or less during one school

year and who is unable to return to his duties in the following school year because of the *same* illness is entitled to a renewal of the five-school-month differential pay benefit. Appellants argue that so long as the illness or injury is the same and the teacher is unable to resume his duties in the second school year, the differential pay benefit is not available. Both point to inequities which result from the adoption of the interpretation urged by the other, but neither is able to cite any case law to support the position asserted.

In *Lakeside Federation of Teachers* v. *Board of Trustees* (1977) 68 Cal.App.3d 609 [137 Cal.Rptr. 517], the court applied these same sections of the Education Code without having to resolve the ambiguities which confront us in this case. There the certificated teacher signed an employment contract for the 1974-1975 school year. The school year began on July 1, 1974, and continued until June 30, 1975. The teacher was unable to report to work on July 1, 1974, and she failed to work at all that year because of illness. She resigned January 31, 1975, before the end of the school year. The trial court held that the teacher was entitled to receive salary for July 1, 1974, through January 30, 1975, minus the sum paid to her substitute. However, the Court of Appeal concluded that she was entitled to only five months' differential pay under the provisions of section 44977 (then § 13467). That court was not required to decide whether the teacher would be entitled to a renewal period during the 1975-1976 school year because the teacher resigned before the end of the 1974-1975 school year.

The court in *Jefferson Classroom Teachers Assn.* v. *Jefferson Elementary School Dist.* (1982) 137 Cal.App.3d 993 [187 Cal.Rptr. 542], was also faced with the task of determining the meaning of section 44977. Similarly, it did not consider the ambiguities we address in this case. Instead, that court was concerned with an alleged conflict between the provisions of section 44977 and the provisions of a collective bargaining agreement which limited differential pay to teachers' illnesses of an extended, continuing nature. The court concluded that the district "may not condition such benefits [the right to receive differential pay] on the requirement that the illnesses or accidents be continuous in time or effect with illnesses or accidents that formed the basis for regular sick leave benefits provided under section 44978." (*Id.*, at p. 1000.)

Although case law provides little assistance in resolving the ambiguities in section 44977, respondents rely on several opinions of the Attorney General. These include 30 Ops.Cal.Atty.Gen. 307 (1957). The question presented in that opinion was whether a school district could pay a substitute teacher and require the absent teacher to make up the difference. The Attorney General concluded: "A governing board of a school district is not

authorized to require payment by a teacher on sick leave of the difference between his salary and the higher salary paid to a substitute teacher." (*Id.*, at p. 308.) In reaching this conclusion, the Attorney General stated, ". . . we take the premise that the primary aim of the Legislature was to afford protection to teachers who, because of illness or accident, are unable to perform their duties. Thus any construction of the statutes which would unduly injure a teacher's economic status must be avoided." (*Ibid.*) The Attorney General also noted a considerable amount of indecision in school circles as to the proper interpretation of section 13841 (now § 44977). His opinion was published in 1957; the confusion has not been clarified by the Legislature or by the courts to date.

Respondents rely also on 43 Ops.Cal.Atty.Gen. 282 (1964), which states: "It is the opinion of this office that if an employee returns to duty after an illness or accident his rights under section 13467 are renewed, and if he is again absent from his duties on account of illness or accident a new five month period commences. There is nothing in the context of section 13467 that requires a different conclusion.

"It has been suggested that this conclusion would lead to absurd results. For example, an employee could be absent one day less than five month[s], return for a short time and absent himself for a period of similar length, receiving a salary for both periods. The Legislature has declared its intent that these provisions be liberally construed (§ 2), and we believe that the rights conferred by section 13467, limited as they are in this case to illness or accident[,] were intended to apply to teachers so unfortunate as to be incapacitated for more than one five month period. Certainly a school board could require satisfactory proof of incapacity and thus prevent abuse of the section. And, of course, physical inability to teach is ground for dismissal." (*Id.*, at p. 283.) That opinion also cites an unpublished Attorney General opinion from 1932, without recitation of the specific facts underlying the earlier opinion, in which the Attorney General ruled that each school year must be considered separately. The published opinion indicates the earlier unpublished opinion considered "the situation of a teacher who had been absent for eight months during one school year and three months of the next school year. . . ." (*Id.*, at p. 284.) However, it does not appear whether the employee whose rights under the statute were renewed had returned to service between the two periods of absence.

This same opinion concluded by stating: "The term 'school month' as used in section 13467 includes legal holidays. Section 13467 specifically provides that the sum deducted from the absent teacher's salary 'shall not exceed the sum which is actually paid' the substitute. The section also expressly authorizes the district, city or city and county to adopt reasonable

rules respecting sick leave *without loss of salary*. Thus the intent seems clear to preserve the salary figure originally contracted for and to limit the maximum loss to the employee to the *actual expense* caused to the district by such absence. The substitute would not be employed on a legal holiday hence there could be no deduction from the absent teacher's monthly salary for a holiday." (*Id.*, at p. 284.)

Appellants argue that if return to service is not required to renew the entitlement to differential pay, similarly situated certificated employees afflicted with similar disabling conditions will receive grossly disparate treatment. For example, assuming two certificated employees both afflicted with a disabling condition of 12 months' duration, the one who was initially stricken in September would be entitled to differential pay benefits only for the pay period ending in late January or early February of the following year. His five school months of differential pay would then be exhausted, and his disabling condition would cease to exist in August, before the start of the next school year. However, if the second employee were similarly afflicted in January, he would receive five months' differential pay for the school year in which he was stricken plus four months of benefits commencing in September of the following school year. From this example, appellants argue that the Legislature could not have intended that the timing of the injury should control entitlement to differential pay.

Respondents treat appellants' contention that a teacher is entitled to an additional five school months of differential pay "only for a different illness or injury" as a concession that a new or different illness or injury renews entitlement to differential pay. They then urge this court to reject any interpretation of section 44977 which would entitle a teacher to differential pay dependent upon whether the injury or illness is a new or old one. They argue that it should not logically or reasonably make any difference whether the injury or illness is a new or old one; to hold otherwise would be unfair and inconsistent with the legislative intent to provide broad economic protection to certificated employees. Respondents illustrate this inequity by the following hypothetical situation: If a teacher were unfortunate enough to become ill in one school year; receive his five school months of differential pay; recover from his illness during the summer; and, the day before school starts, be involved in an automobile accident and be unable to report to work for the next school year, he would be entitled to an additional five school months of differential pay because he sustained a different illness or injury. However, if the teacher (such as Wilson in this case) suffered an injury at school one year, drawing differential pay for five school months, returned to work and rendered services for five years before suffering a recurrence of the original injury, he would not be entitled to an additional five school months of differential pay because the second absence related to

the injury for which he had previously received differential pay under section 44977.

Respondents also reject appellants' contention that annual renewal of the differential pay provisions of section 44977 would impose an intolerable economic burden on school districts, arguing that, if section 44977 is construed to entitle a teacher to five school months of differential pay each school year, such a construction does not mean the entitlement continues ad infinitum. They point to District's right, albeit a carefully safeguarded one, to dismiss a disabled teacher for physical inability to teach pursuant to section 44932. Thus, District's retention of the right to control the fiscal impact of the interpretation of section 44977 by terminating disabled teachers weighs in favor of adoption of that interpretation. However, the drastic nature of the control, i.e., dismissal, could have the opposite effect. Under current budgetary restrictions, a school district might well feel compelled by the prospect of renewal of differential pay rights each school year to commence termination proceedings promptly upon learning a teacher suffered a potentially serious illness or injury. That could work to the disadvantage of teachers generally even if the right to dismiss is not always upheld.

Respondents also emphasize that Wilson entered into a contract of employment for the school year 1980-1981. District then expected to pay a sum certain for that year. If, as respondents contend, Wilson is entitled to differential pay for 1980-1981, District will not pay any more for 1980-1981 than it agreed to pay. Part of the salary will be paid to the substitute teacher and the balance will be paid to Wilson. Such a result is consistent with the apparent legislative purpose of preserving the salary figure specified in the original contract.

Other sections of the Education Code providing for leaves of absence provide little assistance in resolving the ambiguities in section 44977. Section 44978 specifically relates the right to 10 days' paid leave of absence for illness or injury to a school year of service and allows accumulation from year to year. Similarly, section 44981 specifies that no more than six sick leave days in any school year may be used for personal necessities. Section 44964 provides for leave of absence to certificated employees because of accident, illness, or quarantine without regard to the school year. In the same manner, section 44965 provides for leave of absence for pregnancy. Section 44966 provides for study leave not to exceed one year, to be taken in one continuous year or in separate six-month or quarterly periods within a three-year period.

Our review of the apparent purpose of each of the sections mentioned in the preceding paragraph suggests the Legislature has specifically related an

authorized leave of absence to a school year only when there was a short-term benefit or a leave of predictable duration made available to the teacher. We find little to guide us in interpreting section 44977 from our review of those related statutory provisions.

■ In their closing brief, appellants contend for the first time that respondents are equitably estopped from asserting any claim for differential pay during the 1980-1981 school year because Wilson represented to the District that he would be able to return to work in that school year or he would retire; in reliance upon this representation, District abandoned the termination proceedings it had commenced against Wilson in the 1979-1980 school year based on physical inability to teach. (It is clear that respondents urged the availability of such termination proceedings to the trial court as the remedy available to school districts to prevent abuse of yearly renewal of the differential pay provisions of § 44977.) Appellants concede they did not plead facts which give rise to estoppel as an affirmative defense to respondents' petition for a writ of mandamus. The record reveals no reason why appellants should not be subject to the general rule that failure to plead an estoppel on which their defense is premised constitutes a waiver of the estoppel. (*Roam* v. *Koop* (1974) 41 Cal.App.3d 1035, 1044 [116 Cal.Rptr. 539]; see also 3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, § 944, p. 2524.) Moreover, appellants offered no evidence to make estoppel an issue in the hearing on Wilson's right to differential pay in 1980-1981. After the trial court made its findings of fact and conclusions of law on the differential pay issue, it held a further hearing on respondent's claim to health benefits under the applicable collective bargaining agreement. Only in that second hearing did District adduce evidence that it had initiated and then abandoned a proceeding to terminate Wilson's employment based on physical inability to teach. That appellants were aware that estoppel was not a defense to Wilson's claim to differential pay in 1980-1981 appears from their failure to mention estoppel in their opening brief. We may not properly consider, for any purpose, the equitable estoppel issue raised for the first time on appeal. (*Estate of Westerman* (1968) 68 Cal.2d 267, 279 [66 Cal.Rptr. 29, 437 P.2d 517].) Neither can appellants accomplish the same objective by categorizing their defense on appeal as "unclean hands." (See *Moriarty* v. *Carlson* (1960) 184 Cal.App.2d 51, 57 [7 Cal.Rptr. 282].)

■ Without any judicial precedent or legislative history to guide us, we hold the teacher's entitlement to differential pay on account of illness or accident is a separate entitlement for each school year. We are persuaded to this conclusion by the Attorney General opinions previously reviewed and the failure of the Legislature in their reenactments and amendments of section 44977 to clarify the ambiguities the Attorney General noted in his opinions as early as 1957. If the Legislature differs with the unpublished

ruling which the Attorney General affirmed in 43 Ops.Cal.Atty.Gen. 282 (1964) that each school year must be considered separately, and our adoption of that rule in this decision, the Legislature will surely and swiftly amend section 44977 to remove the ambiguities.

II. *Were respondents entitled to pursue the issue of Wilson's entitlement to paid health fringe benefits by a petition for writ of mandate?*

A. *Was Wilson precluded from petitioning for a writ of mandate because of the availability of an adequate remedy at law?*

At the separate hearing in the trial court on Wilson's entitlement to paid health fringe benefits, Mrs. Wilson testified she and her husband had paid District approximately $1,467 in order to continue Wilson's health benefits for the 1980-1981 school year. Based on this testimony, District argues Wilson had an adequate remedy at law in the form of an action for money damages to recover the $1,467 and therefore is precluded from seeking relief by a writ of mandate.

Generally a claim for money damages, including salary, is remediable at law. Therefore, the courts usually refuse to issue a writ of mandamus to compel performance of purely contractual obligations. (*McDonald* v. *Stockton Met. Transit Dist.* (1973) 36 Cal.App.3d 436 [111 Cal.Rptr. 637].) Nonetheless, an exception to this rule has developed where the obligation to pay such money rests upon a governing board and depends upon the interpretation of a statute or ordinance. In *Tevis* v. *City & County of San Francisco* (1954) 43 Cal.2d 190, 198 [272 P.2d 757], the court stated: "It is a general rule that the extraordinary remedy of mandate is not available when other remedies at law are adequate. [Citation.] In proceedings involving claims for wages by municipal employees or by parties to a contract with a municipality, it is generally held that an ordinary action at law for damages is adequate, and a writ of mandate will be denied. [Citations.] As this court has pointed out, '[i]t is settled that mandamus does not lie when there is no cause of action for reinstatement to a position, but merely a claim for damages for breach of contract.' [Citation.]

"In a few situations involving claims by state or municipal employees for wages the general rule has been relaxed. For the most part, these cases concern disputes as to the proper construction of a statute or ordinance defining or giving rise to the exercise of official duty, and, although recognizing that the ultimate effect of a decision may be to adjudicate a money claim, they emphasize the necessity of official cooperation and the ministerial nature of the official acts involved. [Citations.]" (*Ibid.*) See also *Coan* v. *State of California* (1974) 11 Cal.3d 286, 291 [113 Cal.Rptr. 187, 520

P.2d 1003], in which the court stated: "Although a claim for payment of salary is in effect a money claim, mandamus is a proper remedy where the dispute concerns the proper construction of a statute or ordinance giving rise to the official duty to pay the salary claim."

While *Tevis* and *Coan* speak directly about claims for payment of wages or salary and not about claims for reimbursement, the rationale of those cases applies in this case. The validity of Wilson's claim for reimbursement depends upon his entitlement under the collective bargaining agreement to paid fringe benefits for a part of the 1980-1981 school year. District concedes that only if this court determines that Wilson is entitled to differential pay during the 1980-1981 school year will he be entitled to fringe benefits during the same period. Thus the interrelationship of the two money claims is uncontested. To require respondents to bring a mandamus proceeding with regard to Wilson's entitlement to the differential pay under the rationale of *Tevis* and to bring a separate proceeding at law to recover the money paid to maintain continued health insurance would not only result in an unnecessary multiplicity of lawsuits but conceivably would lead to inconsistent judicial determinations. When the resolution of both issues apparently encompasses judicial interpretation of various statutory provisions as in this case, all of the issues can best be handled as part of one proceeding before one judge. Given the fact that Wilson's entitlement to continued paid fringe benefits depended upon his continued entitlement to differential pay, we conclude that Wilson did not have an adequate remedy at law for the recovery of the $1,467 he paid out to continue his health insurance.

B. *Were respondents precluded from pursuing recovery of Wilson's health benefits by mandamus because of Wilson's failure to pursue the grievance procedure under the provisions of the collective bargaining agreement?*

There is no dispute in this case that Wilson was a member of CTA and therefore subject to the terms of the collective bargaining agreement in effect between CTA and District at the time Wilson faced termination of his health benefits unless he paid the premiums personally. Also there is no dispute that the collective bargaining agreement contains a grievance procedure and a provision covering fringe benefits. District contends that, because its act in terminating Wilson's health benefits clearly constituted an alleged violation, misinterpretation or misapplication of the collective bargaining agreement, Wilson was obligated by the terms of that agreement to grieve that termination as a prerequisite to seeking judicial relief. Respondents, however, contend they had no obligation to file a grievance because (1) District was taking the position that Wilson was no longer an employee of District and this meant he was no longer subject to the terms of the

collective bargaining agreement, or (2) the grievance procedure would have been futile, as District had already made up its mind to terminate Wilson's benefits. Although we find no merit in either of respondents' theories excusing Wilson from pursuance of the grievance procedure, we conclude that Wilson was excused from this requirement because his *status* was in dispute.

■ Generally, "It is well established that a party to a collective bargaining contract which provides grievance and arbitration machinery for the settlement of disputes within the scope of such contract must exhaust the internal remedies before resorting to the courts in the absence of facts excusing such exhaustion." (*Johnson v. Hydraulic Research & Mfg. Co.* (1977) 70 Cal.App.3d 675, 679 [139 Cal.Rptr. 136].) ■ However, in *Middaugh v. Board of Trustees* (1975) 45 Cal.App.3d 776 [119 Cal.Rptr. 826] the court concluded that "[m]andate directed to the governing board of a school district is an appropriate vehicle to compel the district to recognize a teacher's *status* as a permanent employee and may be pursued without first exhausting any administrative remedy." (*Id.*, at p. 781, italics added.)

In the instant case, it is not clear what Wilson's status was after the commencement of the 1980-1981 school year when he failed to appear on the first day of school and District contended his contract was invalid. Therefore, the administrative remedy—that is, the grievance procedure—was inadequate with respect to Wilson when his status, upon which his benefits rested, was undetermined and subject to judicial construction of a statute. We therefore conclude that under the particular facts of this case Wilson was excused from exhausting his administrative remedies to obtain reinstatement of his health benefits prior to seeking such relief as part of the mandamus proceeding herein appealed.

III. *Did sufficient evidence support the trial court's determination that Wilson was entitled to paid health benefits?*

■ District contends the only evidence presented on the issue of Wilson's entitlement to health benefits was the testimony of the district superintendent that it was the policy of District not to pay fringe benefits for employees on "unpaid leave" status. However, the district superintendent also testified Wilson was paid his fringe benefits during the time he was drawing differential pay in the 1979-1980 school year. The trial court received this testimony for the purpose of aiding in the interpretation of the ambiguous provisions in the collective bargaining agreement governing fringe benefits. That agreement simply states that District will provide composite plans for medical and prescription, vision and dental services to the employee and all dependents. With one exception, the collective bargaining

agreement includes no provision pertaining in any way to the payment of fringe benefits for teachers on leave of absence. The exception is a provision in the section concerning child rearing leave, which reads: "If a leave required a long-term substitute, the employee shall provide their own fringe payment." The absence of a similar provision in the section authorizing leave for other reasons, including illness or accident, suggests an intention that teachers on leave for reasons other than child rearing shall not lose their fringe benefits.

The testimony that District paid Wilson fringe benefits in the 1979-1980 school year during the period he was receiving differential pay supports the trial court's decision that District is required to reimburse Wilson the amounts he paid to continue in effect the same fringe benefits during the 1980-1981 school year while he was entitled to differential pay.

The judgment of the trial court is affirmed.

Franson, Acting P. J., and Hanson (P. D.), J., concurred.