[No. A024035. First Dist., Div. Four. Sept. 16, 1986.]

JENNIE GREEN et al., Plaintiffs and Appellants, v.
TRAVELERS INDEMNITY COMPANY et al.,
Defendants and Respondents.

[No. A023986. First Dist., Div. Four. Sept. 16, 1986.]

JENNIE GREEN et al., Petitioners, v.
THE SUPERIOR COURT OF CONTRA COSTA COUNTY, Respondent;
INSURANCE COMPANY OF NORTH AMERICA,
Real Party in Interest.

546

## COUNSEL

George W. Kilbourne and Bryce C. Anderson for Plaintiffs and Appellants and Petitioners.

Howard M. Garfield, Marsha L. Morrow, Guy D. Calladine, Ralph M. Tener, Long & Levit, Gibbons, Lees & Schaefer, John Lees, A. Byrne Conley, Robert L. Collins, Richard E. Dodge, Risa Salat, Susan Jeffries, McNamara, Houston, Dodge, McClure & Ney, Raymond Coates, Low, Ball & Lynch, Gibson, Dunn & Crutcher, John L. Endicott, Fred L. Gregory, Randolph P. Sinnott, David K. Ringwood, R. Jeff Carlisle, Lynberg & Nelsen, Donald W. Rees, S. Mitchell Kaplan, Gordon & Rees, Patrick A. Cathcart, Gordon I. Endow, Hancock, Rothert & Bunshoft, Michael E. Dowd, Dowd & Dowd, Robert A. Muhlbach, Kirtland & Packard, Christine Hevener, Farbstein & Brown, Jonathan P. Reynolds, Russ & Reynolds, Donald E. Dorfman, Michael P. Schibly, Lillick, McHose & Charles, Jeff Haney, Bishop, Barry, Howe & Reid, Robert H. Berkes, Bodkin, McCarthy, Sargent & Smith, Alan H. Barbanel, Buchalter, Nemer, Fields, Chrystie & Younger, John G. Niles, Martin S. Checov and O'Melveny & Myers for Defendants and Respondents and Real Party in Interest.

No appearance for Respondent.

## OPINION

**ANDERSON, P. J.**—Plaintiffs Jennie Green and Thomas J. Flavetta (appellants) appeal from a judgment of dismissal entered after demurrers to the first amended complaint were sustained without leave to amend, and from a subsequent order staying all proceedings in the above entitled matter.

This dispute is but another chapter in the asbestos litigation that arose between Johns-Manville Products Corporation, Pittsburg, California (hereafter Manville) and some 17,000 individual plaintiffs claiming asbestos-related personal injuries which are being litigated in approximately 12,000 pending lawsuits. The relevant facts leading to the present appeal may be summarized as follows:

The original action in this case was commenced by appellants against Manville in 1981. Appellant Green, the surviving widow of James Green, brought a wrongful death action against the company, charging that her husband died from the effects of asbestos-related disease he contracted while working at Manville's Pittsburg plant from 1948 to 1981 (Jennie Green et al. v. Manville Corporation, action No. 233426). Appellant Flavetta, an ex-employee of Manville, brought the action on his own behalf alleging that he was suffering from asbestos-related disease which was aggravated by his employment at the plant (Thomas Flavetta v. Johns-Manville Corporation et al., action No. 219323).

On August 26, 1982, the Manville companies jointly filed a petition for reorganization under section 301 of the Bankruptcy Code. (11 U.S.C. § 101 et seq.) Pursuant to its statutory power the bankruptcy court stayed all litigation pending against Manville. (11 U.S.C. §§ 105, 362.) Four days later, on August 30, 1982, appellants filed the present action against 27 insurance companies who provided primary, as well as excess and reinsurance coverages for Manville. The complaint alleged that the defendant insurance carriers (hereafter respondents) breached their duties owed to appellants under Insurance Code[1] section 790.03, and asked for a declaration of said duties. After the trial court sustained respondents' demurrers to the complaint with leave to amend, appellants amended their complaint.

The first amended complaint filed on April 29, 1983, sought declaratory relief as well as damages specifically pleading breaches of section 790.03, subdivision (h),[2] both before and after August 26, 1982. Thus, it was alleged,

---

[1]Unless otherwise indicated, all statutory references are to the Insurance Code.

[2]Section 790.03 provides in relevant part: "The following are hereby defined as unfair methods of competition and unfair and deceptive acts or practices in the business of insurance. . . . [¶] (h) Knowingly committing or performing with such frequency as to indicate a general business practice any of the following unfair claims settlement practices: [¶] (1) Misrepresenting to claimants pertinent facts or insurance policy provisions relating to any coverages at issue. [¶] (2) *Failing to acknowledge and act reasonably promptly* upon communications *with respect to claims* arising under insurance policies. [¶] (3) *Failing to adopt and implement reasonable standards for the prompt investigation and processing of claims* arising under insurance policies. [¶] (4) *Failing to affirm or deny coverage of claims within a reasonable time* after proof of loss requirements have been completed and submitted by the insured. [¶] (5) *Not attempting in good faith to effectuate prompt, fair, and equitable settlements* of claims in which liability has become reasonably clear. [¶] (6) Compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds, when such insureds have made claims for amounts reasonably similar to the amounts ultimately recovered. [¶] (7) Attempting to settle a claim by an insured for less than the amount to which a reasonable man would have believed he was entitled by reference to written or printed advertising material accompanying or made part of an application. [¶] (8) Attempting to settle claims on the basis of an application which was altered without notice to, or knowledge or consent of, the insured, his representative agent, or broker. [¶] (9) Failing, after payment

inter alia, that respondents breached their statutory duty towards appellant third party claimants: (1) by failing to acknowledge and act promptly with respect to appellants' claims arising under the Manville insurance policies (subd. (h)(2), first and second cause of action); (2) by failing to adopt and implement reasonable standards for investigation and processing claims (subd. (h)(3), third and fourth causes of action); (3) by a failure to affirm or deny coverage within a reasonable time (subd. (h)(4), fifth and sixth causes of action); (4) by a failure to effectuate a prompt, fair and equitable settlement in good faith (subd. (h)(5), seventh and eighth causes of action); (5) by delaying the investigation or payment of claims (subd. (h)(11), ninth and tenth causes of action); (6) by failing to settle claims promptly where liability has become clear (subd. (h)(12), eleventh and twelfth causes of action); and (7) by a failure to give a reasonable explanation for the denial of the claim or for the offer of compromise settlement (subd. (h)(13), thirteenth and fourteenth causes of action). Lastly, in the fifteenth and sixteenth causes of action appellants prayed compensatory and punitive damages for the above stated violations.

Respondents demurred to the first amended complaint claiming that the action at bench was premature inasmuch as the insured's liability toward appellants has not been determined yet (*Royal Globe Ins. Co.* v. *Superior Court* (1979) 23 Cal.3d 880 [153 Cal.Rptr. 842, 592 P.2d 329]); that the declaratory relief in this case was inappropriate due to an absence of actual controversy between the parties; and that the action was barred by the stay order of the bankruptcy court. The trial court sustained the demurrers without leave to amend and dismissed the action against respondents. Subsequently, the trial court issued an order staying all proceedings pending resolution of both the Manville bankruptcy litigation (*Johns-Manville Corporation et al.* v. *Asbestos Litigation Group et al.*, Adversary Proceeding No. B 82-6377A, Bankruptcy Court, S.D.N.Y.) and the coordinated insurance coverage litigation in the San Francisco Superior Court (*In re Asbestos Insurance*

---

of a claim, to inform insureds or beneficiaries, upon request by them, of the coverage under which payment has been made. [¶] (10) Making known to insureds or claimants a practice of the insurer of appealing from arbitration awards in favor of insureds or claimants for the purpose of compelling them to accept settlements or compromises less than the amount awarded in arbitration. [¶] (11) *Delaying the investigation or payment of claims* by requiring an insured, claimant, or the physician of either, to submit a preliminary claim report, and then requiring the subsequent submission of formal proof of loss forms, both of which submissions contain substantially the same information. [¶] (12) *Failing to settle claims promptly, where liability has become apparent,* under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage. [¶] (13) *Failing to provide promptly a reasonable explanation* of the basis relied on in the insurance policy, in relation to the facts or applicable law, *for the denial of a claim or for the offer of a compromise settlement.* [¶] (14) Directly advising a claimant not to obtain the services of an attorney. [¶] (15) Misleading a claimant as to the applicable statute of limitations." (Italics added.)

*Coverage Cases,* Judicial Council Coordination Proceeding No. 1072). Appellants filed a notice of appeal from both the judgment of dismissal and the subsequent stay order. In addition, appellants challenged the validity of the stay order also by a petition for writ of mandate and/or prohibition filed in this court (No. A023986). By an order previously issued, we determined that appellants' writ petition will be considered together with this appeal.

Appellants contend that the trial court erred both in sustaining the demurrers without leave to amend and in staying the proceedings. More specifically, appellants claim that the causes of action predicated upon section 790.03 were actionable despite a lack of final judgment against Manville because the bankruptcy proceeding has removed Manville from the civil litigation as effectively as if there had been a settlement or civil judgment in the case. In the alternative, appellants urge that respondents should have been estopped from asserting the absence of final judgment because their own wrongful denial of coverage forced Manville into bankruptcy which, in turn, prevented a conclusion of the underlying action; and that, at any rate, appellants should have been allowed to obtain at least declaratory relief based on equitable grounds. The second prong of appellants' argument (which is repeated in their writ petition) is that the stay order issued by the trial court is not supported by the bankruptcy court order and, hence, invalid. In their counterargument respondents maintain that the ruling of the trial court was correct in both respects because (1) a third party claimant may not bring an action against the insurer until the insured's liability has been determined and the action between the claimant and the insured has been concluded (*Royal Globe Ins. Co.* v. *Superior Court, supra,* 23 Cal.3d 880; *Williams* v. *Transport Indemnity Co.* (1984) 157 Cal.App.3d 953 [203 Cal.Rptr. 868]; *Rodriguez* v. *Fireman's Fund Ins. Co.* (1983) 142 Cal.App.3d 46 [190 Cal.Rptr. 705]; *Nationwide Ins. Co.* v. *Superior Court* (1982) 128 Cal.App.3d 711 [180 Cal.Rptr. 464]); (2) estoppel as a theory cannot be raised for the first time on appeal (*California Teachers' Assn.* v. *Governing Board* (1983) 145 Cal.App.3d 735 [193 Cal.Rptr. 650]; *Roam* v. *Koop* (1974) 41 Cal.App.3d 1035 [116 Cal.Rptr. 539]) and in addition, it is unsupportable by the facts of this case (*Hill* v. *Kaiser Aetna* (1982) 130 Cal.App.3d 188 [181 Cal.Rptr. 564]; *Muraoka* v. *Budget Rent-A-Car, Inc.* (1984) 160 Cal.App.3d 107 [206 Cal.Rptr. 476]); (3) declaratory relief is inappropriate in the present instance since it would be based on a hypothetical contingency, i.e., Manville's potential liability (*Selby Realty Co.* v. *City of San Buenaventura* (1973) 10 Cal.3d 110 [109 Cal.Rptr. 799, 514 P.2d 111]), and would address only past wrongs (*Babb* v. *Superior Court* (1971) 3 Cal.3d 841 [92 Cal.Rptr. 179, 479 P.2d 379]; *Travers* v. *Louden* (1967) 254 Cal.App.2d 926 [62 Cal.Rptr. 654]); and (4) the stay order is supported by both the bankruptcy court's order and the

circumstances of the instant case. For the reasons that follow we agree with respondents and affirm the judgment.

## I. *Appellants' Unfair Claims Practices Action is Premature.*

The trial court sustained respondents' demurrers on the ground that appellants' first amended complaint failed to state facts sufficient to constitute a cause of action under *Royal Globe Ins. Co.* v. *Superior Court, supra,* 23 Cal.3d 880 and *Rodriguez* v. *Fireman's Fund Ins. Co., supra,* 142 Cal.App.3d 46 (i.e., the action was premature). We believe the ruling of the court is well supported by applicable legal principles and therefore withstands judicial scrutiny on appeal.

The controlling case is *Royal Globe.* Therein plaintiff filed a personal injury action against the food market. He joined the food market's insurance carrier, Royal Globe, as a party defendant alleging that Royal Globe violated certain provisions of section 790.03, subdivision (h). The Supreme Court held that while a third party claimant may sue the insurer for violating subdivision (h) of section 790.03, the third party's suit may not be brought until the action between the injured party and the insured is "concluded." (*Royal Globe Ins. Co.* v. *Superior Court, supra,* 23 Cal.3d at p. 884.) The rationale of the court's decision was spelled out as follows: "unless the trial against the insurer is postponed until *the liability of the insured is first determined,* the defense of the insured may be seriously hampered by discovery initiated by the injured claimant against the insurer. In addition, damages suffered by the injured party as a result of the insurer's violation of subdivisions (h)(5) and (h)(14) may best be determined *after the conclusion of the action by the third party claimant against the insured.* Thus, plaintiff's claim against defendant was brought prematurely and the trial court should have sustained defendant's demurrer and granted the motion for judgment on the pleadings on that ground." (*Id.,* at p. 892, italics added.)

The Supreme Court's holding in *Royal Globe* has been followed in subsequent decisions, all confirming that an injured party may not institute an action against the insurance carrier under section 790.03 until the liability of the insured has been determined by final judgment or settlement with dismissal.

Thus, in *Nationwide Ins. Co.* v. *Superior Court* (1982) 128 Cal.App.3d 711 [180 Cal.Rptr. 464], the injured plaintiff sued the insured and recovered judgment against her at trial. While the insured's appeal was pending, the plaintiff brought a section 790.03, subdivision (h), action against Nationwide, the insurance carrier, for a failure to settle. In holding that the action

against Nationwide was premature and the demurrer to the complaint should have been sustained for a lack of an actionable wrong, the appellate court pointed out that "the court's language in *Royal Globe* 'until the liability of the insured is first determined' and 'after the conclusion of the action by the third party claimant against the insured' could only have had reference to a final determination and conclusion, a final judgment" (at p. 714) and emphasized that the injured party may not institute a section 790.03 action until a judgment establishing the liability of the insured has been secured.

In *Rodriguez* v. *Fireman's Fund Ins. Co., supra,* 142 Cal.App.3d 46, the issue was whether the settlement and dismissal of the underlying action against the insured constituted a "conclusion" of the suit within the meaning of *Royal Globe.* While the appellate court held that a settlement combined with a dismissal satisfied *Royal Globe,* it has reaffirmed that the conclusion of the underlying action by final judgment or settlement is a legal prerequisite to bringing a section 790.03 action against the insurer. (At p. 53.)

The principle that in the absence of final judgment or settlement between the insured and the third party claimant, any action against the insurance carrier is premature and subject to demurrer or other summary disposal is underlined by additional cases as well. For example, in *Industrial Indemnity Co.* v. *Mazon* (1984) 158 Cal.App.3d 862 [204 Cal.Rptr. 885], the appellate court emphasized that *Royal Globe* and its progeny "have held that the claimant's suit against the insurer may follow disposition of his claim against the insured through settlement as well as by final judgment following a trial [citation], but may not be initiated while his action against the insured is on appeal and no final judgment or conclusion has been reached [citation]. Thus, *a claimant's cause of action against the insurer does not accrue* until the time that suit may be brought—in other words, *until the action between the claimant and the insured has reached a final conclusion."* (At p. 865, italics added.) Similarly, in *Muraoka* v. *Budget Rent-A-Car, Inc., supra,* 160 Cal.App.3d 107, the appellate court underscored that "Plaintiff is precluded from bringing an action against Budget for its alleged bad faith practices in its capacity as an insurer until the conclusion of the underlying action against the insured" and that "Plaintiff's failure to allege such a conclusion prevents him from stating this cause of action." (At p. 120.) Lastly, in *Carr* v. *Progressive Casualty Ins. Co.* (1984) 152 Cal.App.3d 881 [199 Cal.Rptr. 835] where the personal injury plaintiff died before the underlying suit was concluded, the court held that the causes of action for unfair claims practices could be asserted only after the estate concluded the tort litigation against the insured. Once again, the court made it emphatic that while a cause of action ordinarily accrues when the wrongful act is done and the obligation or liability arises "*a statutory bad faith cause of*

*action does not accrue* until suit may be brought *and such a suit 'may not be brought until the action between the injured party and the insured is concluded.'"* (At p. 889, italics added.)

The cases cited above are dispositive of the present matter. The record at bench reveals that all causes of action alleged by appellants were predicated on various provisions of section 790.03, subdivision (h). Moreover, the first amended complaint to which the demurrers were sustained without leave to amend explicitly stated that the lawsuits brought by appellants against Manville were pending in the superior court and that such actions remained unresolved due to the bankruptcy proceeding initiated by the insured.[3] In brief, since the facts alleged by appellants reveal that the underlying action against Manville, the insured, has not been brought to a conclusion by either final judgment or settlement, the first amended complaint as a matter of law failed to state a cause of action and was a proper subject to demurrer. (Code Civ. Proc., § 430.10, subd. (e); *Heninger* v. *Foremost Ins. Co.* (1985) 175 Cal.App.3d 830 [221 Cal.Rptr. 303]; *Sych* v. *Insurance Co. of North America* (1985) 173 Cal.App.3d 321 [220 Cal.Rptr. 692]; *Taylor* v. *State Farm Fire & Casualty Co.* (1985) 172 Cal.App.3d 557 [218 Cal.Rptr. 403].)

Appellants' proposition that the initiation of a bankruptcy procedure should be deemed equivalent to the conclusion of the case because it "removes" the insured indefinitely from the civil litigation, is lacking in both legal and policy support.

 The law is firmly settled that in order to bring a section 790.03 action against the insurer, the third party claimant must demonstrate that the underlying suit against the insured has been concluded by either final judgment or settlement which determines the liability of the insured. The

---

[3]The pertinent parts of the complaint read as follows: "3. *Each of the said plaintiffs is a party plaintiff in an action pending in the Superior Court* of the State of California in and for the County of Contra Costa at the present time arising from injuries alleged to have been sustained as a direct and proximate result of the action of the defendants in the said suits which caused the injury and damage alleged therein to the plaintiffs in each case. (See JENNIE GREEN et al. v. MANVILLE CORPORATION, Action No. 233426 filed July 7, 1981 and TOMAS FLAVETTA v. JOHNS-MANVILLE CORPORATION et al., Action No. 219323, filed February 2, 1981 in the Contra Costa County Superior Court.) [¶] 4. Prior to his death, JAMES GREEN filed an action for personal injuries in the Superior Court of California in and for the County of Contra Costa, entitled JAMES D. GREEN v. JOHNS-MANVILLE CORPORATION et al., being action No. 224823. *This action* was filed July 7, 1981, and *is still pending*. Such action arose from injuries plaintiff claimed to have sustained while working on the premises and as an employee of JOHNS-MANVILLE CORPORATION. . . . [¶] 14. On August 26, 1982 the insured under the aforementioned policies filed a proceeding under Chapter 11 of the Bankruptcy Act; such action was taken when each of the actions of the plaintiffs herein was pending. *Such actions remain unresolved to the present time;* no manner for resolution of such claims has been established in such proceedings." (Italics added.)

policy reason for this rule is obvious: the insurance carrier's liability toward a third party is derivative in nature, that is, the insurer cannot be found liable toward third persons unless the insured itself is liable. As concisely stated in *Williams* v. *Transport Indemnity Co., supra,* 157 Cal.App.3d 953, 960: "It is fundamental that an insurance contract is, by nature, an indemnity contract; no enforceable claim accrues against the insurer until the insured's liability is in fact established. (See, e.g., Ins. Code, § 11580, subd. (b)(2); *Mathews Cadillac, Inc.* v. *Phoenix of Hartford Ins. Co.* (1979) 90 Cal.App.3d 393, 397 [].) Therefore, however well isolated facts may *seem* to indicate a time when liability had become reasonably clear to the insurer, if the insured had no liability in actual fact, the insurer can have breached no duty to settle a third party claim." (Original italics.) It follows that the determination of the insured's liability must be deemed an indispensible precondition to any suit against the insurer both as a matter of logic and legal policy.

 Moreover, it is well demonstrated that the rules relative to the unfair claims practices action remain cogent even if the opportunity to determine the insured's liability is lost. The case especially in point is *Williams* v. *Transport Indemnity Co., supra,* 157 Cal.App.3d 953. In *Williams,* the plaintiff's husband had been injured in an automobile accident. The injured husband entered into settlement negotiations with Transport Indemnity, defendant's insurance carrier, but died before the negotiations could be concluded. Prior to his death, Mr. Williams did not initiate any legal action to establish the liability of the insured, neither did his estate bring any action after his death. Plaintiff, the deceased husband's widow, brought the present action against Transport Indemnity for violation of section 790.03 following the expiration of the one-year statute of limitations, i.e., at a time when action against the insured was already barred. The trial court granted Transport Indemnity's motion for summary judgment on the basis that there had been no final determination of the insured's liability which would form the basis of an unfair claims practices suit by the plaintiff. The appellate court affirmed by pointing out that despite the fact that the insured's liability could no longer be litigated due to the statutory bar, the establishment of such liability was still a necessary requisite to bring a section 790.03 suit against the insurance carrier and that the case brought by the plaintiff "presents no factual circumstances which raise policy considerations favoring an exception to the foregoing requirement." (At p. 962.) The idea expressed in *Williams* is unmistakable: if an entire loss of opportunity to establish the insured's liability is not sufficient to carve out an exception to the *Royal Globe* rule, a fortiori, mere temporary delay to bring a claim against the insured (as happened in this case) cannot give rise to an exception either. (See to the same effect, *Muraoka* v. *Budget Rent-A-Car, Inc., supra,* 160 Cal.App.3d 107; *Carr* v. *Progressive Casualty Ins.*

*Co.*, *supra*, 152 Cal.App.3d 881; *Nationwide Ins. Co.* v. *Superior Court*, *supra*, 128 Cal.App.3d 711.)

## II. *Appellants Cannot Invoke the Theory of Estoppel.*

■ Appellants' alternative argument that respondents should be estopped from relying on *Royal Globe* because the conclusion of the underlying action has been thwarted by respondents' wrongful conduct in forcing Manville into bankruptcy, is also without foundation.

First of all, appellants failed to plead the theory of estoppel and failed to argue that doctrine in the court below, despite the fact that they were allowed to amend their complaint and did, in fact, advance lengthy arguments in opposition to respondents' demurrers. ■ It is, of course, well settled that a party who has an opportunity to plead estoppel on which his cause of action or defense is premised must do so, and that an eventual failure to so plead constitutes a waiver of estoppel. (*California Teachers' Assn.* v. *Governing Board, supra*, 145 Cal.App.3d 735, 746; *Roam* v. *Koop, supra*, 41 Cal.App.3d 1035, 1044.) ■ It is likewise settled (1) "that a party to an action may not, for the first time on appeal, change the theory of the cause of action" and (2) "that issues not raised in the trial court cannot be raised for the first time on appeal." (*Estate of Westerman* (1968) 68 Cal.2d 267, 279 [66 Cal.Rptr. 29, 437 P.2d 517].) The latter rule especially applies to the doctrine of estoppel which constitutes factual elements which must be both pled and proved in the trial court. (*Glass* v. *Benkert* (1971) 18 Cal.App.3d 322, 329 [95 Cal.Rptr. 735]; see also *California Teachers' Assn.* v. *Governing Board, supra*, 145 Cal.App.3d at p. 746.)

■ Second, axiomatic is also the rule that the theory of estoppel is invoked as a defensive matter to prevent the party estopped from alleging or relying upon some fact or theory that would otherwise permit him to recover something from the party asserting estoppel. (*In re Mercantile Guaranty Co.* (1968) 263 Cal.App.2d 346, 354 [69 Cal.Rptr. 361].) Or as frequently stated: "The doctrine acts defensively only. It operates to prevent one from taking an unfair advantage of another but not to give an unfair advantage of one seeking to invoke the doctrine." (*Peskin* v. *Phinney* (1960) 182 Cal.App.2d 632, 636 [6 Cal.Rptr. 389]; accord *People* ex rel. *Dept. Pub. Wks.* v. *Volz* (1972) 25 Cal.App.3d 480, 488 [102 Cal.Rptr. 107]; *Meyer* v. *Glenmoor Homes, Inc.* (1966) 246 Cal.App.2d 242, 267 [54 Cal.Rptr. 786].) Appellants here purport to use the doctrine offensively.

Third, even if assumed arguendo that the theory of estoppel can be raised in this case, appellants still cannot prevail. The doctrine of estoppel by conduct is embodied in Evidence Code section 623 which states: "Whenever

a party has, by his own statement or conduct, intentionally and deliberately led another to believe a particular thing true and to act upon such belief, he is not, in any litigation arising out of such statement or conduct, permitted to contradict it." As the case law explains, four elements are essential to the application of the doctrine of equitable estoppel: (1) the party to be estopped must be apprised of the facts; (2) he must intend that his conduct be acted upon, or must so act that the party asserting the estoppel had a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury. (*Cal. Cigarette Concessions* v. *City of L. A.* (1960) 53 Cal.2d 865, 869 [3 Cal.Rptr. 675]; *Muraoka* v. *Budget Rent-A-Car, Inc.*, *supra*, 160 Cal.App.3d 107, 116; *Transport Clearings—Bay Area* v. *Simmonds* (1964) 226 Cal.App.2d 405, 427 [38 Cal.Rptr. 116].) There can be no estoppel where one of these elements is missing. (*Hill* v. *Kaiser Aetna*, *supra*, 130 Cal.App.3d 188, 195; see also 7 Witkin, Summary of Cal. Law (8th ed. 1974) Equity, § 132, p. 5352.)

 Herein appellants have not (and could not have) alleged any facts which would have reflected misrepresentation by respondents or concealment of facts known to respondents, but unknown to appellants. Nor could appellants allege any conduct by respondents which was intended to induce reliance on the part of appellants resulting in injury or prejudice to them.

Appellants' argument that the trial court abused its discretion in sustaining respondents' demurrers without leave to amend because they could have alleged the elements of estoppel and thus could have remedied the defect in the pleading, requires just a brief reply. While, as a general rule, an amendment to a pleading should be allowed where the defect may be possibly cured by supplying the omitted allegations (*Leach* v. *Drummond Medical Group, Inc.* (1983) 144 Cal.App.3d 362, 368 [192 Cal.Rptr. 650]; *Grieves* v. *Superior Court* (1984) 157 Cal.App.3d 159, 168 [203 Cal.Rptr. 556]), it is well settled that where, as here, there is no reasonable probability that under the undisputed facts and the applicable law the defects in the pleading can be eliminated or cured, it is not an abuse of discretion to sustain a general demurrer without leave to amend. (*Industrial Indemnity Co.* v. *Mazon*, *supra*, 158 Cal.App.3d 862, 866; see also *Knox* v. *Streatfield* (1978) 79 Cal.App.3d 565, 575 [145 Cal.Rptr. 39]; *Berkeley Police Assn.* v. *City of Berkeley* (1977) 76 Cal.App.3d 931, 942-943 [143 Cal.Rptr. 255]; *Sackett* v. *Wyatt* (1973) 32 Cal.App.3d 592, 603 [108 Cal.Rptr. 219].) This is especially true in the present instance where appellants were given the opportunity to amend their complaint once, but failed to cure the defect or supply the omission in the amended pleading. (*Goodman* v. *Kennedy* (1976) 18 Cal.3d 335, 349 [134 Cal.Rptr. 375, 556 P.2d 737]; 5 Witkin, Cal. Procedure (3d ed. 1985) Pleading, § 946, p. 380.)

### III. *Declaratory Relief Is Inappropriate.*

■ Appellants' last contention that the first amended complaint stated a cause of action for at least declaratory relief, is also groundless.

Section 1060 of the Code of Civil Procedure sets forth in pertinent part that "Any person interested under a deed, will or other written instrument, or under a contract, or who desires a declaration of his rights or duties with respect to another, or in respect to, in, over or upon property, or with respect to the location of the natural channel of a watercourse, may, *in cases of actual controversy relating to the legal right and duties of the respective parties,* bring an original action in the superior court or file a cross-complaint in a pending action in the superior, municipal or justice court for a declaration of his rights and duties in the premises, including a determination of any question of construction or validity arising under such instrument or contract." (Italics added.) ■ As the cases spell out the "actual controversy" referred to in the statute is one which "admits of definitive and conclusive relief by judgment within the field of judicial administration, as distinguished from an advisory opinion upon a particular or hypothetical state of facts. The judgment must decree, not suggest, what the parties may or may not do." (*Selby Realty Co.* v. *City of Buenaventura, supra,* 10 Cal.3d 110, 117; *Winter* v. *Gnaizda* (1979) 90 Cal.App.3d 750, 755 [152 Cal.Rptr. 700].)

■ In the case at bench appellants have not secured a final determination of Manville's liability which is central to determining the culpability of respondents, Manville insurers. It is obvious that in the absence of such adjudication no present and actual controversy exists between the parties, and that any eventual declaration of rights and duties would constitute mere advisory opinion based on hypothetical rather than actual, presently existing facts. Since declaratory relief is not available based on speculative and hypothetical contingencies, appellants' request for declaratory relief must be rejected on this ground alone.

The case illustrating this point is *United Services Automobile Assn.* v. *Martin* (1981) 120 Cal.App.3d 963 [174 Cal.Rptr. 835]. In *Martin,* plaintiff automobile insurer sought a declaration against the insured and the third party claimants of the insured that it was relieved of its duty to defend and indemnify because the insured has failed to cooperate in defending the action. The trial court sustained a demurrer to the first amended complaint and dismissed the action for failure to state an actual and present controversy. The Court of Appeal affirmed by pointing out that the issue of prejudice to the defense of the tort action could not be established while that action was pending. Significantly enough the court stated: "Logically, the required

showing of prejudice cannot be made while the main tort action is still pending, its outcome uncertain, and therefore declaratory relief against the injured persons at this stage is inappropriate." (At p. 966.)

In view of our conclusion that the trial court's ruling on the demurrers was proper and must be sustained on appeal, the alternative issue addressing the validity of the stay order has become moot.

The judgment dismissing the action is affirmed. The purported appeal from the stay order is dismissed inasmuch as such order is nonappealable. The petition for writ of mandate, prohibition or other alternative relief (action No. A023986) is dismissed as moot.

Channell, J., and Sabraw, J., concurred.