[S. F. No. 22359.    In Bank.    Feb. 26, 1968.]

Estate of WILLIAM HARRY WESTERMAN, SR., Deceased.
FRANK L. BAMBRIDGE, Plaintiff and Appellant, v.
ALBERT WESTERMAN et al., Defendants and
Respondents.

Guidotti & Mellana, Aldo P. Guidotti and Charles A. Lee for Plaintiff and Appellant.

John J. Franzoia for Defendants and Respondents.

SULLIVAN, J.—Appellant Frank L. Bambridge appeals from a judgment (Prob. Code, § 1240)[1] entered in proceedings for the determination of heirship (§§ 1080-1082) decreeing that appellant is entitled to no part of the estate of William Harry Westerman, Sr., deceased, under his claim thereto based on section 229 as the son of decedent's previously deceased spouse.

The facts are not in dispute. In 1903 decedent married Jane Dwyer Bambridge (Jane), the mother of appellant by a former marriage. Two children were born issue of the marriage of decedent and Jane; William Harry Westerman, Jr., who died unmarried and without issue in 1963, predeceasing decedent, and a daughter who died in infancy. In 1911 Jane died intestate, survived by decedent, Westerman, Jr., and appellant.

At the time of her death Jane owned as her separate property three parcels of real property located in Alameda County, designated Parcels 1, 2 and 3 by the trial court. By the decree of distribution entered in the estate of Jane Westerman a two-thirds interest in Parcels 1, 2 and 3 was distributed to decedent and the remaining one-third, to Westerman, Jr. Decedent's two-thirds interest consisted of one-third distributable to him under the laws of succession and

---

[1]Hereafter, unless otherwise indicated, all section references are to the Probate Code.

one-third similarly distributable to appellant but conveyed by appellant to decedent before such distribution.

In 1920 decedent married Margaret Sexton (Margaret), who in 1923 acquired as her separate property a parcel of real property located in Alameda County, designated Parcel 4 by the trial court.

On February 28, 1929, Margaret, joined by decedent, conveyed Parcel 4 by grant deed to Westerman, Jr. On that day, decedent joined by Margaret conveyed by grant deed to Westerman, Jr., all of decedent's interest in Parcels 1, 2 and 3. As previously stated, Westerman, Jr., already owned a one-third interest in Parcels 1, 2 and 3. Thereafter and on the same day Westerman, Jr., conveyed by a single grant deed to decedent and Margaret as joint tenants Parcels 1, 2, 3 and 4. By so doing, he divested himself of the one-third interest distributed to him from the estate of Jane, decedent's first wife. All of the deeds were recorded on March 4, 1929.

In 1950 Margaret, decedent's second wife, died. In 1957 decedent conveyed Parcels 1, 2, 3 and 4 to himself and Westerman, Jr., as joint tenants. In 1963 Westerman, Jr., died. In 1964 decedent died, leaving neither spouse nor issue. During the ensuing administration of decedent's estate appellant asserted that under the provisions of section 229 he was entitled to a one-third interest in Parcels 1, 2 and 3 owned by decedent as his separate property at death. This claim was grounded on the assertion that such property had been the separate property of Jane, his mother and decedent's first wife, and had come to decedent from such previously deceased spouse by descent.[2]

The trial court concluded so far as is here material that decedent acquired a one-third interest in Parcels 1, 2 and 3 from appellant for valuable consideration; that decedent acquired a one-third interest in Parcels 1, 2 and 3 from Westerman, Jr., for valuable consideration; that decedent "originally acquired a one-third ($\frac{1}{3}$) interest in Parcels 1, 2 and 3 from his predeceased wife, Jane Westerman, but that as a result of subsequent transactions and conveyances from third parties referred to in the Findings of Fact, which convey-

[2]The record discloses that appellant makes no claim as to the one-third interest in said parcels which was conveyed by appellant to decedent and thereafter distributed to decedent in accordance with such conveyance. It also appears that all four parcels were sold during the course of the instant probate proceedings. Nevertheless, as we point out *infra*, upon the conveyance of property subject to the operation of section 229, any property received in exchange therefor, is subject to distribution under that section.

ances were for valuable consideration, said decedent at the time of his death owned said interest in Parcels 1, 2 and 3 by virtue of an intervening source and acquired a 'new title' to the same''; and that appellant was not entitled to any portion of decedent's estate by virtue of section 229 ''or for any other reason.''[3] However the trial court failed to specify which particular subsequent transaction or conveyance created a new title in decedent or whether each transaction and conveyance was in itself sufficient to render section 229 inoperative. Indeed, the findings of fact and conclusions of law are susceptible of the interpretation that the court's determination of new title rested on two bases—the conveyances leading to the creation of the first joint tenancy in 1929 and the conveyance effectuating the second joint tenancy in 1957. Judgment was entered accordingly. This appeal followed.

Section 229 provides: ''If the decedent leaves neither spouse nor issue, and the estate or any portion thereof was separate property of a previously deceased spouse, and came to the decedent from such spouse by gift, descent, devise or bequest, or became vested in the decedent on the death of such spouse by right of survivorship in a homestead or in a joint tenancy between such spouse and the decedent, such property goes in equal shares to the children of the deceased spouse and to their descendants by right of representation, and if none, then'' to other specified relatives of the deceased spouse.

It is now settled ''that the underlying principle of sections 228 and 229 is that the origin or source of acquisition of the property should and does control its distribution.'' (*Estate of Allie* (1958) 50 Cal.2d 794, 797-798 [329 P.2d 903]; see *Estate of Reizian* (1951) 36 Cal.2d 746, 749 [227 P.2d 249]; *Estate of Abdale* (1946) 28 Cal.2d 587, 590-591 [170 P.2d 918]; *Estate of Rattray* (1939) 13 Cal.2d 702, 713-714 [91 P.2d 1042]; *Estate of Putnam* (1933) 219 Cal. 608, 611 [28 P.2d 27].) Referring to these sections in *Rattray,* we said: ''It is apparent from the history of these code provisions and the various changes therein that ever since the amendment in 1905, wherein the origin or source of the property was first set up as one of the determining factors in the descent and dis-

[3]The court expressly found that the 1929 deed from decedent and Margaret to Westerman, Jr., and the deed back of the same date from Westerman, Jr., to decedent and Margaret as joint tenants ''recited a consideration and was given for consideration''; and that the 1957 deed from decedent to himself and Westerman, Jr., as joint tenants ''had $38.50 in revenue stamps affixed thereto and was given for consideration.''

tribution of the estate of a decedent dying intestate without issue, that there has been a consistent attempt to work out a reasonable, consistent scheme of distribution wherein upon the death of a decedent intestate without issue, instead of the whole property going to the relatives of the last surviving spouse, the property should go back to the relatives of the spouse from which title was derived. . . . It will be noted that the provisions relative to the separate property of the predeceased spouse and relative to the community property of the spouses . . . were intended to furnish one general plan of distribution based upon the same underlying fundamental principle, that the origin or source of the property should determine its distribution.'' (Pp. 713-714.) We have observed that the foregoing ''principle has been uniformly recognized in the construction of these provisions.'' (*Estate of Abdale, supra,* at p. 590, collecting cases.)

But although the ''reason and purpose of section 229 of the Probate Code is, in the absence of testamentary disposition, to turn the property back to the family from which it came . . . the section never sought to limit the right of the [surviving spouse] to dispose of it by will or conveyance.'' (*Estate of Putnam, supra,* 219 Cal. 608, 611; see also *Estate of Brady* (1915) 171 Cal. 1, 6 [151 P. 275]; *Estate of Flood* (1942) 55 Cal.App.2d 410, 412 [130 P.2d 811].) Possessing this right fully, the surviving spouse may convey the property to a third person and thereby preclude any operation of section 229 upon that property, whether the conveyance is for consideration or by gift. (See *Estate of Putnam, supra*; *Estate of Harris* (1937) 9 Cal.2d 649, 662 [72 P.2d 873]; *Estate of Flood, supra.*) Once such a conveyance has ''effectively removed the property from the status it had formerly held'' a subsequent reacquisition of the title by means of a new conveyance does not restore the property to its former character or status. (*Estate of Putnam, supra,* 219 Cal. 608, 611; *Estate of Flood, supra.*

The foregoing is illustrated by *Estate of Putnam, supra,* 219 Cal. 608, wherein the rule of ''new title'' was first enunciated. There, the decedent sold certain property which she had inherited from her first husband and with the proceeds purchased stock, causing the certificates to be issued in the names of herself and her second husband as joint tenants. Two years later, she and her second husband endorsed the certificates and arranged for new certificates to be issued in her name alone. Upon her death intestate, distribution of the stock

to her second husband[4] and other heirs of hers instead of to the daughter of her predeceased first husband was upheld on the ground that she had acquired a "new title."

In *Putnam,* this court said: "[T]hat property so inherited does not lose its character or status as such by a mere change in form or identity, such, for example, as the exchange of inherited parcel A for parcel B. The latter property acquires the status of that formerly possessed by parcel A. [Citation.] Thus it follows that if when the stock was originally purchased and the joint tenancy created, J. F. Putnam conveyed to his wife property in exchange for his joint tenancy interest, the property so conveyed by him would be subject to distribution under section 229. Also, although the creation of the joint tenancy *were without valuable consideration* moving to Elizabeth D. Putnam, yet she had *effectively removed the property from the status it had formerly held.* [Citation.] It is obvious that had the joint tenancy continued until her death, J. F. Putnam would, by reason of his right of survivorship, have owned the property outright. That which is the subject of this contest would have been his, as a matter of right. Hence the reason and purpose of section 229 is not applicable. The equity of the situation warrants the statement that if, in fact, J. F. Putnam voluntarily and without consideration surrendered his joint tenancy interest to Elizabeth D. Putnam, he and his family are those who should benefit by his generosity. Sufficient has been said to demonstrate that *the title* which Elizabeth D. Putnam *acquired upon the termination of the joint tenancy was a new title; . . ."* (Italics added.) (219 Cal. at pp. 611-612; see also, *Estate of Frary* (1938) 26 Cal.App.2d 83, 88-89 [78 P.2d 760] (Marks, J., concurring); *Estate of Flood, supra,* 55 Cal.App.2d 410, 412; Ferrier, Jr., *Rules of Descent Under Probate Code Sections 228 and 229, and Proposed Amendments* (1937) 25 Cal.L.Rev. 261, 276-278.)

In *Estate of Flood, supra,* 55 Cal.App.2d 410, decedent during her lifetime conveyed to her daughter by gift deed two parcels of property which decedent had received from her previously deceased husband. Upon her death 15 years later, the daughter by will left all her estate to her mother including the aforesaid property. The court held that neither section 228 nor section 229 was applicable, stating: "[I]f the deed

---

[4]As it read at that time, section 229 was operative merely upon the death of the decedent without issue instead of without spouse and issue, as it now provides.

from Mrs. Flood to her daughter 'effectively' changed the status of the property, her subsequent title as devisee of her daughter did not restore the former status or character thereof. In the *Putnam* case the right to follow property in a changed form is recognized [citation], but not after it has been clothed with a complete 'new title.' [Citation.] In the present case, Mrs. Flood obtained a new title." (P. 412.)

█ The facts of the case now before us bring it clearly within the principles declared in the *Putnam* and *Flood* decisions. Prior to the 1929 transactions the property inherited by decedent from his first wife was continuously held by him in the same status, namely as it "came to decedent from such spouse." (§ 229.) He had not sold, exchanged or given away the property although he had an absolute and unrestricted right to do so. The property was his own to do with as he wished. His subsequent acts in 1929 clearly show an intention *not* to leave the property in the status in which it had been, to exercise his full power of disposition over it, and to fashion thereby a new status for the property, namely, one of owning the property in joint tenancy with his second wife. These conveyances endowed the property as it were with a new legal personality. We conclude that decedent's 1929 conveyance to Westerman, Jr., "effectively removed the property from the status it had formerly held" (*Estate of Putnam, supra,* 219 Cal. 608, 611) and that the title which decedent received by virtue of the conveyance by Westerman, Jr., to decedent and Margaret in joint tenancy was a "new title."

█ Appellant contends that decedent's 1929 conveyance to Westerman, Jr., was one merely to an intermediary in order to create a valid joint tenancy between decedent and Margaret under the then existing law, that there was not "any unconditional disposition of the property and reacquisition from a new source" and that decedent at all times retained at least a one-third interest in Parcels 1, 2 and 3. This argument fails for several reasons.

First, we point out that no testimony was received below as to the 1929 transactions, the evidence being wholly documentary and consisting of the various deeds, the decree of distribution in Jane's estate and the order establishing Margaret's "fact of death" and terminating her joint tenancy in all *four* parcels. Appellant entered no objection to any of this evidence. The trial court properly found from the recitals in the deeds themselves that each of the 1929 conveyances covering Parcels 1, 2 and 3, the deed by decedent to Westerman,

Jr., and the deed back from Westerman, Jr., to decedent and Margaret of all of said parcels (together with Margaret's Parcel 4) were "given for consideration." These findings were supported by the documentary evidence. In essence, appellant's argument asks us to ignore such findings and treat the transaction as a nominal one devoid of consideration. If appellant's right to the property under section 229 depended upon the fact that the two deeds in question were merely technical conveyances to a "strawman" without consideration, then the burden was upon appellant to establish such fact. (*Estate of Simonton* (1920) 183 Cal. 53, 60 [190 P. 442]; *Estate of Harris, supra,* 9 Cal.2d 649, 662; *Estate of Rattray, supra,* 13 Cal.2d 702, 706; *Estate of Abdale, supra,* 28 Cal.2d 587, 593.) This he made no attempt to do. (See former Code Civ. Proc., § 1981; see also Evid. Code, § 550.)

Second, assuming *arguendo* that Westerman, Jr., was acting as a nominal intermediary or "strawman,"[5] this does not necessarily mean that the 1929 transactions were merely technical or formal. It is not true, as appellant argues, that decedent always retained the one-third interest which came to him from Jane. If appellant is arguing that decedent always owned at least a one-third interest in the property irrespective of the source of such one-third, his argument proves nothing. Confining ourselves to the one-third interest coming to him directly by descent (and excluding the additional one-third conveyed by appellant) we observe that decedent *before* the 1929 transaction owned such undivided one-third interest as a tenant in common, but *after* the transaction owned such one-third in joint tenancy with Margaret, presumably then owning only half of said one-third.[6] Quite apart from the

[5]Conveyance to an intermediary who held title momentarily and who then reconveyed to the original conveyor and another as joint tenants was a method of creating a joint tenancy commonly in use at that time. (See generally, 13 Cal.Jur.2d, Cotenancy, § 11, p. 297.) Such a procedure insured the existence of two of the requisite four unities, unity of time and unity of title. (See generally 2 American Law of Property, Joint Tenancies, § 6.1, pp. 4-6 and fn. 10; 13 Cal.Jur.2d, Cotenancy, § 8, p. 295; 4 Powell on Real Property (1967) p. 643; 4 Thompson on Real Property (1961) pp. 15-16, 18.) We need not decide whether this procedure was required before the 1929 amendment to Civil Code, section 683 which expressly permitted the creation of a joint tenancy "by transfer from a sole owner to himself and others" (see *Edmonds* v. *Commissioner of Internal Revenue* (1937) 90 F.2d 14, 16). If, as appellant now argues, the property was conveyed to Westerman, Jr., for the specific purpose of creating a joint tenancy in decedent and Margaret, it is arguable that such was done for the purpose of creating upon its reacquisition the requisite unity of title and therefore a "new title."

[6]Viewing the transactions with respect to *all* of decedent's interest in Parcels 1, 2 and 3, we note that *before* the transactions decedent

foregoing, however, the significant and determinative aspect of the transaction is that decedent effectively altered the status of the property. Even if it were so, the fact that the quantum of his interest in the property, which came to him by descent, *after* the transaction was no less than what it had been *before,* would not of itself prevent the status or condition of such interest from being altered or preclude decedent from owning the property by virtue of a "new title" from the intervening grantor.

Finally, and still upon the assumption that Westerman, Jr., was a nominal intermediary or "strawman" (see fn. 5, *ante*), an examination of the transactions as a whole and as affecting all *four* parcels not only fails to reveal them as technical or formal but on the contrary confirms their substantiality. In this light, *before* the transactions decedent owned only an undivided two-thirds interest as a tenant in common in Parcels 1, 2 and 3 and no interest whatsoever in Margaret's Parcel 4; *after* the transactions, he owned an undivided one-half joint tenancy interest in the entire fee of all four parcels (decedent and Margaret having thereby acquired from Westerman, Jr., the latter's one-third interest in Parcels 1, 2 and 3). Thus, under any of the above analyses, we conclude that decedent altered the status of the property which "came to the decedent" from Jane and thereafter continued to own such property under a "new title."

Since the question is not before us on the present record, we do not decide whether a conveyance by decedent to a nominal intermediary with an immediate conveyance back to decedent *alone* would have been effective to alter the status of the property and establish a new title. Finally, in view of our conclusion that the trial court's judgment properly rests on the 1929 transactions, we do not decide whether the creation of the 1957 joint tenancy was effective to establish a "new title" in decedent.

█ We also reject the contention of respondents that the instant case is controlled by our decision in the *Estate of*

owned an undivided two-thirds interest as a tenant in common and *after* the transactions owned the entire fee with Margaret in joint tenancy, having an undivided one-half joint tenancy interest instead of an undivided two-thirds interest in common. (See Civ. Code, § 683; *Siberell* v. *Siberell* (1932) 214 Cal. 767, 773-774 [7 P.2d 1003]; *Estate of Harris, supra,* 9 Cal.2d 649, 659-660; *Stark* v. *Coker* (1942) 20 Cal.2d 839, 844 [129 P.2d 390]; see generally 2 American Law of Property, *op. cit. supra;* 48 C.J.S., Joint Tenancy, § 6, p. 930; 4 Thompson, *op. cit. supra,* pp. 12-13, 18.)

*Abdale, supra,* 28 Cal.2d 587. There decedent acquired separate property before his marriage and shortly after his marriage caused title thereto to be transferred to himself and his wife in joint tenancy, the transfer being a gift as to the wife. Upon his wife's death intestate, decedent again became the sole owner of the property. Upon his death intestate, his wife's son by a prior marriage claimed the property under section 229. Holding that section inapplicable we said: ''If the property had its origin or source as the separate property of the *predeceased* spouse, section 229 applies. If it had its source as separate property of the *surviving* spouse, the section does not apply, but the same purpose is accomplished by distribution of the property upon the death of the surviving spouse to the kin of such spouse under other provisions of the Probate Code. . . . So in the present case, the *decedent himself* and *not* the *predeceased spouse,* was the source of the property, for it was acquired through his efforts before it came by gift to the predeceased spouse. The earlier acquisition of the property by the decedent in the present case from an outside source corresponds to the acquisition by the surviving spouse from the third party donors in the *Flood* and *Putnam* cases and prevents the application of section 229 for the same reason, namely, the property did not have its origin or source as the separate property of the predeceased spouse within the meaning of the section.'' (Italics added.) (28 Cal.2d at pp. 590-591.)[7]

There is no question in the instant case but that the property which came to decedent by descent from his first wife Jane was the separate property of such previously deceased spouse. *Abdale* therefore is inapplicable to the instant case.

█ Appellant urges alternately that he is entitled to any consideration which was received by decedent in exchange for

---

[7]In *Abdale,* this court continued: ''Petitioner's contention that the character of the property at the time of the death of the predeceased spouse is controlling would render sections 228 and 229 inconsistent with each other. . . . Since the two sections must be 'read and construed together' [citation], consistency requires that the phrase 'was separate property' in section 229 also be interpreted as referring to the character of the property *before it was placed in joint tenancy.* A distribution under section 228 of property that was community property before it was placed in joint tenancy, on the theory that the two spouses are deemed to have contributed equally to its acquisition can find a consistent counterpart in section 229 only if property originally acquired by one of the spouses before it was placed in joint tenancy is distributed in recognition of the fact that this spouse alone contributed to its acquisition.'' (Italics added.) (28 Cal.2d at pp. 591-592; see also *Estate of Rudman* (1948) 85 Cal.App.2d 270 [193 P.2d 39]; Note (1946) 34 Cal.L.Rev. 766, 768.)

the conveyance of the property into joint tenancy between the decedent and Margaret. Although a conveyance of property subject to the operation of section 229 effectively removes the property from the status it had formerly held, any consideration received by decedent in exchange therefor assumes the status of the property conveyed. (See *Estate of Putnam, supra,* 219 Cal. 608, 611; *Estate of Brady, supra,* 171 Cal. 1, 4-5, 6; *Estate of Flood, supra,* 55 Cal.App.2d 410, 412.) The right to follow property subject to the operation of section 229 into a changed form enables that section to operate on any property retained by decedent at the time of his death traceable into the specific property coming to decedent in accordance with the statute. Therefore, upon decedent's death, appellant was entitled to any property retained by decedent that could have been traced into property which was received by him in consideration for the conveyance to Westerman, Jr.

The trial court found that all three of the grant deeds involved in the transaction which resulted in the creation of the joint tenancy between decedent and Margaret "recited a consideration and [were] given for consideration" (see fn. 3, *ante*). However, the amount of any consideration given was not specified. Appellant made no attempt to establish what the consideration was and to trace it into the assets of decedent's estate. In such circumstances, we are not surprised that appellant made no request for a special finding as to the amount of consideration received by decedent in the transaction. On the contrary, appellant took the position that there was no consideration for the transaction, objected to the language of the proposed findings, viz., "was given for consideration," on the basis that such language was not supported by the evidence, and requested a special finding only as to the amount of the consideration received by *Margaret Westerman* for the conveyance of *Parcel 4* to Westerman, Jr. The issue was neither raised in his "Statement of Claim of Interest in Estate" or at the proceedings for the determination of heirship, nor considered by the trial court or raised in appellant's "Objections to Proposed Findings of Fact, Proposed Counter-Findings and Request for Special Findings." It therefore appears from the record that appellant urges this alternate contention for the first time on appeal.

Although appellant's position is that the case should be remanded to the trial court in order to determine whether any consideration was received by decedent and if so, the amount thereof, and whether any of the property retained at the time

of his death can be traced into that consideration received, no reason appears why we should not apply the established rules that a party to an action may not, for the first time on appeal, change the theory of the cause of action (§§ 1081, 1230; *Ernst* v. *Searle* (1933) 218 Cal. 233, 240-241 [22 P.2d 715]; *Estate of Stevens* (1945) 27 Cal.2d 108, 116 [162 P.2d 918]; *Panopulos* v. *Maderis* (1956) 47 Cal.2d 337, 340-341 [303 P.2d 738], citing cases; *Caplan* v. *Schroeder* (1961) 56 Cal.2d 515, 521 [15 Cal.Rptr. 145, 364 P.2d 321]; *Dolske* v. *Gormley* (1962) 58 Cal.2d 513, 518-519 [25 Cal.Rptr. 270, 375 P.2d 174])[8] and that issues not raised in the trial court cannot be raised for the first time on appeal. (§§ 1081, 1230; *Imperial Valley Land Co.* v. *Globe Grain & Mill. Co.* (1921) 187 Cal. 352, 359 [202 P. 129]; *Douglas* v. *Southern Pac. Co.* (1928) 203 Cal. 390, 397 [264 P. 237]; *Damiani* v. *Albert* (1957) 48 Cal.2d 15, 18 [306 P.2d 780]; *Everly Enterprises, Inc.* v. *Altman* (1960) 54 Cal.2d 761, 765 [8 Cal.Rptr. 455, 356 P.2d 199]; *County of Alameda* v. *Southern Pac. Co.* (1961) 55 Cal.2d 479, 486 [11 Cal.Rptr. 751, 360 P.2d 327]; *Dimmick* v. *Dimmick* (1962) 58 Cal.2d 417, 422 [24 Cal.Rptr. 856, 374 P.2d 824].)

The judgment is affirmed.

Traynor, C. J., McComb, J., Peters, J., Tobriner, J., Mosk, J., and Burke, J., concurred.

Appellant's petition for a rehearing was denied March 27, 1968.

---

[8]The instant case clearly does not fall within the exception to the rule stated in *Panopoulos* v. *Maderis, supra,* 47 Cal.2d 337, 341, that ''If a question of law only is presented on the facts appearing in the record the change in theory may be permitted.'' (See *Tyre* v. *Aetna Life Ins. Co.* (1960) 54 Cal.2d 399, 405 [6 Cal.Rptr. 13, 353 P.2d 725]; *Burdette* v. *Rollefson Constr. Co.* (1959) 52 Cal.2d 720, 725-726 [344 P.2d 307]; *Ward* v. *Taggart* (1959) 51 Cal.2d 736, 742 [336 P.2d 534].)