[No. A037963. First Dist., Div. Five. Feb. 2, 1988.]

CALIFORNIA STATE EMPLOYEES' ASSOCIATION et al.,
Plaintiffs and Appellants, v.
THE STATE OF CALIFORNIA et al., Defendants and Respondents.

COUNSEL

Robert L. Mueller and Gary P. Reynolds for Plaintiffs and Appellants.

Christine A. Bologna and Edmund K. Brehl for Defendants and Respondents.

OPINION

HANING, J.—Plaintiffs/appellants California State Employees' Association et al., appeal from a judgment denying their petition for writ of mandate to compel respondents State of California et al., to make full salary payments to their employees without deductions to recoup prior alleged overpayments.[1] We conclude that the challenged salary deductions violate the attachment and wage garnishment laws, and reverse.

In August 1986 an audit report of the California Medical Facility at Vacaville reported 731 outstanding erroneous salary advances totalling $463,113. In mid-October 1986 respondents began notifying affected employees by form letter of the amount of and reason for the individual overpayments.[2] The letter set out a repayment plan to deduct up to $400 from the net salary warrant and 40 percent of net overtime pay beginning

---

[1] Also appealing are Local 1000 of Service Employees International Union, AFL-CIO; Lois Jennings; Lisa Shepherd; and Joyce Thomas on behalf of themselves and others similarly situated. Also responding are California Department of Corrections and its director, Daniel McCarthy; and Eddie Ylst, Superintendent of the California Medical Facility.

[2] Appellants allege at least one employee suffered pay deductions without receiving prior notice. Since appellants did not raise this issue in their petition for writ of mandate or to the trial court, we need not consider this contention on appeal. (*Estate of Westerman* (1968) 68 Cal.2d 267, 278-279 [66 Cal.Rptr. 29, 437 P.2d 517].)

with the October pay period. Employees were given seven days within which to negotiate a modification of the repayment schedule due to undue hardship, and any other questions were directed to the business office. At least one employee received a memorandum from the personnel office in mid-October entitled "Accounts Receivable," which specified the amount of and reason for the overpayment and gave the name of a contact person to call if there were questions.

Respondents contend that Government Code section 17051 authorizes the salary withholding method utilized herein, and rely on *Geftakys* v. *State Personnel Board* (1982) 138 Cal.App.3d 844 [188 Cal.Rptr. 305] as authority for their position.

Appellants contend that the general provisions of Government Code section 17051 must give way to the specific statutory scheme of the attachment law (Code Civ. Proc., § 481.010 et seq.) and the wage garnishment law (Code Civ. Proc., § 706.010 et seq.), and that respondents' recoupment procedure constitutes an unlawful attachment or garnishment in violation thereof, or an unlawful setoff in contravention of the policies underlying the attachment and wage garnishment statutes.

Government Code section 17051, states: "Whenever any warrant is drawn in favor of a payee having a claim against the State and is delivered to a State agency for delivery to a payee, and prior to delivery to the payee any facts or circumstances exist which would affect the validity or alter the amount of the claim, the person authorized to make payments out of any funds under the direct control of the State agency may indorse and deposit the warrant in the treasury to the credit of the fund or appropriation upon which it was drawn or deposit it to the credit of the appropriate account under his control. Where such a warrant is deposited to the account under the control of the State agency, it shall, when necessary, pay the portion of the claim then due and payable and return the balance to the treasury to the credit of the fund or appropriation upon which the warrant was drawn."

In *Geftakys* v. *State Personnel Board, supra,* 138 Cal.App.3d 844, a state hearing officer who had been overpaid challenged the state's recoupment of the overpayment by means of salary deductions under Government Code section 17051. The Court of Appeal held that the deductions were authorized by Government Code section 17051, but it was not confronted with and thus did not decide the issues raised in the instant case. *Geftakys* was decided in 1982, but was dealing with a salary dispute which arose in 1973-1974. The current attachment law did not become operative until 1977, and the wage garnishment law became operative July 1, 1983. As a

consequence, *Geftakys* lends no support for respondents' position. (See, e.g., 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, §§ 783-784.)

Both the wage garnishment law and the attachment law protect wages from creditors. The wage garnishment law provides the exclusive judicial procedure by which a judgment creditor can execute against the wages of a judgment debtor, except for cases of judgments or orders for support. (Code Civ. Proc., § 706.020.)[3] It limits the amount of earnings which may be garnished in satisfaction of a judgment and establishes certain exemptions from earnings which may not be garnished. (See Code Civ. Proc., §§ 706.050-706.052.) The attachment law expressly prohibits any prejudgment attachment or levy of execution against wages. (Code Civ. Proc., § 487.020, subd. (c).)

Insofar as the attachment law and wage garnishment law reflect or establish public policy, it is obvious that they provide substantial protection for wages against both pretrial attachments and enforcement of judgments. ■ "The policy underlying the state's wage exemption statutes is to insure that regardless of the debtor's improvidence, the debtor and his or her family will retain enough money to maintain a basic standard of living, so that the debtor may have a fair chance to remain a productive member of the community. [Citation.] Moreover, fundamental due process considerations underlie the prejudgment attachment exemption. Permitting appellant to reach respondent's wages by setoff would let it accomplish what neither it nor any other creditor could do by attachment and would defeat the legislative policy underlying that exemption. We conclude that an employer is not entitled to a setoff of debts owing it by an employee against any wages due that employee." (*Barnhill* v. *Robert Saunders & Co.* (1981) 125 Cal.App.3d 1, 6 [177 Cal.Rptr. 803].)

In *Barnhill,* a private employer deducted from an employee's final paycheck the balance of a promissory note which the employee owed to the employer. No statute authorized the deduction, and the Labor Code required immediate payment of unearned wages at the time of discharge. Despite these distinctions from the instant case however, the *Barnhill* court's statement of public policy is correct.

---

[3] Code of Civil Procedure section 706.020 states: "Except for a wage assignment for support, the earnings of an employee shall not be required to be withheld by an employer for payment of a debt by means of any judicial procedure other than pursuant to this chapter." "Earnings" is defined as "compensation payable by an employer to an employee for personal services performed by such employee, whether denominated as wages, salary, commission, bonus, or otherwise." (Code Civ. Proc., § 706.011, subd. (a).)

The wage garnishment law applies to public employees. (Code Civ. Proc., § 708.720, subd. (b).)

■ We agree with appellants that the specific provisions of the attachment and wage garnishment laws take precedence over the general provisions of Government Code section 17051. (See Code Civ. Proc., § 1859; *Agricultural Labor Relations Bd.* v. *Superior Court* (1976) 16 Cal.3d 392, 420 [128 Cal.Rptr. 183, 546 P.2d 687].) Government Code section 17051 deals generally with "claim[s] against the State," and refers merely to "facts or circumstances . . . which would *affect the validity or alter the amount of the claim*." (Italics ours.) It also requires the agency in question to "pay the portion of the claim *then due* and payable." (Italics ours.) Presumably, wages actually earned during the current pay period are due, and the fact that the employee owed a debt to the state, even for a prior overpayment, does not "affect the validity or alter the amount of the [current] claim" for wages earned. We conclude that this general language is superseded by the specific provisions of the attachment and wage garnishment laws protecting earnings from such extra-judicial seizures. (See also *Randone* v. *Appellate Department* (1971) 5 Cal.3d 536 [96 Cal.Rptr. 709, 488 P.2d 13].)

In light of our resolution of this issue it is not necessary to reach appellants' remaining contentions.

The judgment is reversed. The matter is remanded with instructions to issue the writ commanding respondents to make normal salary payments to the affected parties without the deductions at issue herein.

Low, P. J., and King, J., concurred.

A petition for a rehearing was denied February 24, 1988, and respondents' petition for review by the Supreme Court was denied April 21, 1988.