[No. F011646. Fifth Dist. July 20, 1990.]

SOCIAL SERVICES UNION, LOCAL 535, SEIU, AFL-CIO,
Plaintiff and Appellant, v.
BOARD OF SUPERVISORS OF TULARE COUNTY et al.,
Defendants and Appellants.

COUNSEL

Van Bourg, Weinberg, Roger & Rosenfeld and Vincent A. Harrington, Jr., for Plaintiff and Appellant.

Lita O'Neill Blatner, County Counsel, Kathleen Bales-Lange and Ronald E. Rezac, Deputy County Counsel, for Defendants and Appellants.

OPINION

BEST, Acting P. J.—

STATEMENT OF THE CASE

Social Services Union, Local 535, SEIU, AFL-CIO (hereinafter SEIU), is a recognized employee organization representing Tulare County employees

in bargaining unit 4. On March 31, 1988, SEIU filed a petition for writ of mandate and for injunctive relief, seeking to prevent appellants Tulare County and Tulare County Board of Supervisors (hereinafter County) from recouping accumulated insurance premiums by deducting monies from employees' paychecks. The trial court denied the request for a temporary restraining order but did order the issuance of an alternative writ of mandate.

Following a hearing on the petition, the court issued a memorandum of decision finding that the County had no legal authority to withhold past due sums from an employee's paycheck absent written consent or compliance with the Wage Garnishment Law.

The union's objections to the proposed statement of decision were heard on August 2, 1988. At that time, the legal status of monies deducted by the County after the court refused to order injunctive relief was discussed. The trial court's judgment restrained the County from withholding any amount for past due insurance premiums from SEIU members' paychecks without consent or compliance with wage garnishment laws, but did not order reimbursement of monies previously deducted by the County, which aggregated $25,123.30.

Appellant County appeals from the judgment precluding recoupment of past due insurance premiums through payroll deductions. SEIU cross-appeals from the judgment which it claims wrongfully omitted an order for reimbursement of funds illegally deducted from members' paychecks.[1]

STATEMENT OF FACTS

The County of Tulare provides a health benefits plan (Plan) to eligible employees. The Plan is self-funded. The County pays the full premium for the employees' benefits and a portion of the premium for dependents. Employees opting for dependent coverage pay the additional premium through authorized payroll deductions.

On January 20, 1987, the Tulare County Board of Supervisors passed a resolution authorizing a 20 percent premium increase effective February 1, 1987, for those electing dependent coverage. This action was taken prior to any negotiations with SEIU representatives. Following the resolution, SEIU requested bargaining on the issue of implementation of the increase under

---

[1] SEIU originally appealed from the judgment on the first cause of action which denied the writ seeking to compel the County to deduct membership dues from pay warrants. The union has withdrawn its appeal on that cause of action.

the provisions of the Meyers-Milias-Brown Act. (Gov. Code, § 3500 et seq.) The bargaining process began on March 2, 1987, and continued for almost 14 months.

During this period of negotiations the increased premium was not paid by the employees of bargaining unit 4 and no deductions for the premium increase were made from the employees' paychecks. The employees who had dependent coverage continued to receive such coverage despite the fact they continued to pay, through authorized payroll deductions, only the pre-increase cost of the premium for dependent coverage.

No agreement was reached on implementation of the increase. On February 16, 1988, the County declared "impasse" and referred the matter to the board of supervisors.

The "County of Tulare Employment Relations Policy" provides for an impasse procedure when representatives of the employer and the employee organization "fail to reach agreement on wages, hours, and other terms and conditions of employment, . . ." The procedure calls for submission of each side's "final proposal and recommendation." The board then approves either the County's or the employee organization's recommendation. The board's decision is final.

Both the negotiator for the County and representatives of SEIU were given an opportunity to make a presentation to the board at impasse. The union directed the board's attention to the recent Court of Appeal opinion in *California State Employees' Assn.* v. *State of California* (1988) 198 Cal.App.3d 374 [243 Cal.Rptr. 602](*CSEA* v. *State of California* ), arguing that under the law of that case the County was precluded from recovering accumulated health plan premiums through payroll deductions without employee authorization. The union urged that if the board allowed collection of past due premiums, it should do so gradually, over a period of 10 pay periods. The board moved to adopt the County's position with the "unresolved premiums to be collected over a period of eight pay periods." The County issued a memorandum to employees represented by SEIU on March 22, 1988, advising that past due premiums would be recouped through payroll deductions covering eight pay periods. The deductions were to commence with the April 5, 1988, warrant. By letter dated March 28, 1988, the County advised SEIU the amount of health premiums to be collected aggregated $25,123.30. The amount of accumulated premiums to be collected from each of the 129 affected employees ranged from $13 to $263.03.

On March 30, 1988, SEIU gave notice to the office of the county counsel that it would seek ex parte relief against the County's recapture plan. The writ petition and request for injunctive relief were filed the following day.

DISCUSSION

RECOUPMENT OF PAST DUE INSURANCE PREMIUMS THROUGH
PAYROLL DEDUCTIONS

County argues that application of the wage garnishment laws to recoupment of sums owed a public entity by its represented employees regarding a subject that falls within the mandatory bargaining language of Government Code[2] sections 3500 through 3510 impermissibly interferes with the collective bargaining scheme. SEIU counters that the County is an ordinary judgment creditor with no special rights and that the salary deductions are violative of the attachment and wage garnishment laws.

In *CSEA* v. *State of California, supra,* 198 Cal.App.3d 374, an employee organization challenged salary deductions implemented by the state to recoup prior alleged overpayments. The court found that "[t]he wage garnishment law provides the exclusive judicial procedure by which a judgment creditor can execute against the wages of a judgment debtor," and concluded the employer was not entitled to a setoff of employee debts from wages due the employee. (*Id.* at p. 377.) The County claims *CSEA* does not apply in the collective bargaining context.

The Myers-Milias-Brown Act (MMBA) (§§ 3500-3510) "codifies California's recognition of the right of certain public employees to bargain collectively with their government employers." (*San Joaquin County Employees Assn.* v. *City of Stockton* (1984) 161 Cal.App.3d 813, 817-818 [207 Cal.Rptr. 876].) It requires public employers to meet and confer in good faith with employee representatives regarding "wages, hours, and other terms and conditions of employment . . . ." (§ 3505.) The meet-and-confer process is intended to "promote full communication between public employers and their employees by providing a reasonable method of resolving disputes . . . ." (§ 3500.) Representatives in the meet-and-confer process are to "endeavor to reach agreement on matters within the scope of representation . . . ." (§ 3505.) The MMBA "does not prescribe the manner in which an agreement between a local government and an employee organization should be put into effect—. . ." (*United Public Employees* v. *City and County of San Francisco* (1987) 190 Cal.App.3d 419, 423 [235 Cal.Rptr. 477].)

In the event an agreement cannot be reached, "impasse" is declared and the matter resolved by the governing board. The "County of Tulare Employment Relations Policy" provides an impasse procedure in section 13:

---

[2] All future statutory references are to the Government Code unless otherwise indicated.

"(a) If after a reasonable period of time, representatives of the County and the certified employee organization fail to reach agreement on wages, hours, and other terms and conditions of employment, the County and the certified employee organization may agree upon the appointment of a mediator . . . .

"(b) If mediation does not result in settlement of the impasse, the County's representatives and the certified employee organization representative shall each submit to the Board of Supervisors in writing their final proposal and recommendation, along with the reasons therefor, and such other data which would serve to clarify their position. The Board may approve either the County representative's or the employee organization representative's recommendation, or they may call for testimony, or they may ask for submission of further data, or they may seek the recommendations of an objective neutral party knowledgeable in matters of public employment relations. The Board's decision shall be final."

■ No one disputes that group insurance benefits, as well as employee contribution toward the premiums for those benefits, are a mandatory subject of bargaining. (*W. W. Cross & Co.* v. *National Labor Relations Board* (1st Cir. 1949) 174 F.2d 875; *San Joaquin County Employees Assn.* v. *City of Stockton, supra*, 161 Cal.App.3d 813, 818-819.) Section 3505 requires County to meet and confer in good faith prior to making any unilateral change in the level of wages or benefits. (*Vernon Fire Fighters* v. *City of Vernon* (1980) 107 Cal.App.3d 802, 823 [165 Cal.Rptr. 908].) The County has a duty to maintain the status quo during negotiations respecting insurance benefits. (*San Joaquin County Employees Assn., supra*, at p. 818.)

In *San Joaquin County Employees Assn.* v. *City of Stockton, supra*, 161 Cal.App.3d 813, the city notified its employees that it would withhold funds from their paychecks to cover the increased cost of insurance. A new memorandum of understanding was being negotiated at the time. The employee organization secured a peremptory writ of mandate commanding city, pending completion of the negotiation process, to pay all premiums necessary to maintain the current level of health benefits. Relying on federal authorities, the court concluded that when the city unilaterally began to extract monetary contributions from employees to pay for the benefits it was obligated to supply, it disturbed the status quo. "City's unilateral extraction of the contributions violated section 3505's commands that City meet and confer in good faith and that it fully consider a presentation by plaintiff prior to arriving at a course of action." (*Id.* at p. 819.)

It is clear from the record here that the necessity for the 20 percent increase in premiums was not in dispute. Although it is true, as the County

argues, that the manner of collection of past due premiums was, in fact, the subject of negotiations, also central to the dispute was the question of who would pay the increase. SEIU argued during meet-and-confer sessions that County should pay all of the increased cost. The County sought to have the employees share the increased costs. The matters actually in dispute during the 14 months of negotiations pursuant to the MMBA and the "County of Tulare Employment Relations Policy" were first, who was going to pay the increased premiums and, second, if the costs were to be shared by the employees, the manner of collection of the past due premiums. It was on these issues that the parties were unable to agree and upon which an impasse was ultimately declared.

SEIU does not contend that County engaged in bad faith bargaining nor that impasse had not occurred or was improperly declared. SEIU simply argues, relying on the holding in *CSEA* v. *State of California, supra*, that the union could neither voluntarily agree through collective bargaining to collection of the past due premiums by way of payroll deductions, nor could the County legally so provide by way of impasse procedures. We disagree.

 The County and SEIU had full power through collective bargaining to establish the health and welfare program and to provide for the earnings deductions to pay for it. (See *International Woodworkers* v. *McCloud River Lbr. Co.* (N.D.Cal. 1953) 119 F.Supp. 475, 486-487.) It is undisputed that County's board of supervisors had the final authority under the impasse procedure to determine unresolved issues. Invoking impasse is a protected activity (*Public Employees Assn.* v. *Board of Supervisors* (1985) 167 Cal.App.3d 797, 807 [213 Cal.Rptr. 491]) like any other facet of the bargaining process, which should not be interfered with.

 The County correctly contends that Labor Code section 224 is a "specific" statute permitting the withholding of insurance premiums by an employer "when a deduction is expressly authorized in writing by the employee to cover insurance premiums, hospital or medical dues, . . . or when a deduction is expressly authorized by a collective bargaining or wage agreement."

Of course, the County had no right to collect additional insurance premiums until bargaining obligations under the MMBA were concluded. At that time, however, prospective salary deductions to cover premium increases were authorized by the board's resolution as part of the collective bargaining process. As such, the deductions were not prohibited by the attachment and garnishment laws. To hold otherwise would be an unlawful interference with the rights and obligations of the parties to resolve disputes regarding conditions of employment by collective bargaining pursuant to the MMBA.

It would also be violative of the MMBA's purpose of "providing a reasonable method of resolving disputes regarding wages, hours, and other terms and conditions of employment between public employers and public employee organizations." (§ 3500.)

*CSEA* v. *State of California, supra,* 198 Cal.App.3d 374, does not hold to the contrary. There, the debt arose by virtue of the state's erroneous salary advances to the affected employees, which debt was collectible from the individual employee through the judicial process. Neither the debt itself nor the method of payment resulted from collective bargaining. The court merely held that salary deductions to recoup the overpayments were not authorized by section 17051, as contended by the state, and that the wage garnishment and attachment law expressly prohibits any prejudgment attachment or levy of execution against wages.

Here, the obligation of the affected employees to pay the increased costs incurred for coverage of their dependents, as well as the method of payment (by payroll deductions over eight pay periods), came into existence as a result of collective bargaining and impasse proceedings undertaken pursuant to the MMBA and the County policy. Therefore, the payroll deductions did not constitute extrajudicial seizures condemned in *CSEA* v. *State of California, supra.*

In the alternative, SEIU argues that even if the right to recoup premiums is properly determined through collective bargaining procedures, the union cannot voluntarily waive its members' rights under the attachment and garnishment laws.

"Generally, a collective bargaining agreement may not waive statutory rights which arise from an extraordinarily strong and explicit state policy." (*Wright* v. *City of Santa Clara* (1989) 213 Cal.App.3d 1503, 1506 [262 Cal.Rptr. 395].) Collective bargaining agreements may not contain provisions abrogating fundamental constitutional rights. (*Phillips* v. *State Personnel Bd.* (1986) 184 Cal.App.3d 651, 660 [229 Cal.Rptr. 502].) However, the Labor Code expressly authorizes agreements between public employees and their employers for the payment of health care costs through payroll deductions. (Lab. Code, § 224.) Further, " '[t]he policy underlying the state's wage exemption statutes is to insure that regardless of the debtor's improvidence, the debtor and his or her family will retain enough money to maintain a basic standard of living, so that the debtor may have a fair chance to remain a productive member of the community. [Citation.]' " (*CSEA* v. *State of California, supra,* 198 Cal.App.3d 374, 377.)

Under the circumstances presented here, public policy would not be promoted by limiting the County's recourse to the filing of individual lawsuits against each of its affected employees. SEIU and the employees had notice of the premium increase. The matter was the subject of negotiations for more than a year, during which time no payroll deductions were made for the increased premiums and dependent coverage was provided at the preexisting premium rate. During that time, employees had the option of discontinuing dependent coverage if they did not wish to incur any additional financial obligation. Applying the *CSEA* rationale in the collective bargaining context, at least in the circumstances of this case, would not protect against the "improvidence" of any employee.

Having concluded that the judgment must be reversed for the above stated reasons, we do not address appellant County's additional contentions nor SEIU's cross-appeal.

### DISPOSITION

The judgment is reversed. Appellant County to have its costs on appeal.

Vartabedian, J., and Brown (G. A.), J.*, concurred.

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.