NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No. CC-17-1375-LSF |
| BARBRA WILLIAMSON, | Bk. No. 9:14-bk-12772-DS |
| Debtor. | |
| BARBRA WILLIAMSON, | |
| Appellant, | |
| v. | **MEMORANDUM**[*] |
| PARS, | |
| Appellee. | |

Submitted Without Argument on September 27, 2018

Filed – October 10, 2018

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Deborah J. Saltzman, Bankruptcy Judge, Presiding

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

Appearances:     Michael D. Kwasigroch on brief for Appellant; Matthew
                 S. Walker of Pillsbury Winthrop Shaw Pittman LLP on
                 brief for Appellee.

Before: LAFFERTY, SPRAKER, and FARIS, Bankruptcy Judges.

## INTRODUCTION

Debtor Barbra Williamson appeals the bankruptcy court's order denying her motion for sanctions under § 362(k)[1] against Phase II Systems dba Public Agency Retirement System ("PARS") for violating the automatic stay by offsetting a retirement benefit overpayment from Ms. Williamson's monthly benefit. The bankruptcy court denied the motion because it found that the setoff constituted equitable recoupment, which is not prohibited by the automatic stay.

We AFFIRM.

## FACTUAL BACKGROUND

Ms. Williamson served on the city council and the planning commission of the City of Simi Valley for more than 17 years. Upon her retirement, she applied for benefits under the city's Retirement

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

Enhancement Plan (the "Plan"). The Plan provides a small supplement to California Public Employees' Retirement System ("CalPERS") benefits for eligible city employees, including city council members, the city manager, and other senior city management officials.[2] PARS, a privately held California corporation, is the trust administrator for the Plan. Ms. Williamson submitted to PARS an application for benefits that correctly stated her final **annual** salary of $14,938.04, which would have entitled Ms. Williamson to a monthly benefit of $99.87. But PARS sent Ms. Williamson an enrollment packet that calculated her monthly Plan benefit at $1,198.48 based on the mistaken assumption that $14,938.04 was Ms. Williamson's **monthly** salary. Ms. Williamson signed the enrollment forms and returned them to PARS.

In February 2013, Ms. Williamson began receiving monthly benefits of $1,198.48. PARS discovered its mistake in approximately August of 2014 and wrote to Ms. Williamson requesting reimbursement of the overpayment, which at that time totaled $21,972.20.

Ms. Williamson filed her chapter 13 petition in December 2014, listing PARS as a creditor. Nearly three years later, on October 25, 2017, Ms. Williamson filed a "Motion for Contempt, Violation of the Automatic Stay, Damages, Punitive Damages, Costs and Attorneys Fees, and

---

[2] Ms. Williamson was on the city council at the time the Plan was approved and voted in favor of approving it.

Accounting for Sums Due the Debtor by Creditor PARS" (the "Motion").

The Motion alleged that postpetition, PARS, with notice of the bankruptcy, had withheld retirement benefits to offset the overpayment resulting from PARS' miscalculation of the proper monthly payment due Ms. Williamson.[3]

On November 15, 2017, PARS filed an opposition to the Motion, arguing that its actions in offsetting the overpayment constituted recoupment, which was not a violation of the automatic stay. PARS alleged that Ms. Williamson should have realized she was being overpaid given that she had been involved in the city council's approval of the plan, was one of only twenty people who benefitted from the plan, and knew that the plan was intended to provide a small supplement to her CalPERS benefit of $684.28 per month. PARS also noted that Ms. Williamson had signed enrollment forms that included the calculation error, attaching a copy of those forms to its supporting declaration.[4] Ms. Williamson did not file a

---

[3] Ms. Williamson stated in the Motion that the overpayment amount was $26,000. It is not clear from the record why this amount differs from the $21,972.20 asserted by PARS when it initially notified Ms. Williamson of the overpayment in August 2014.

[4] Although not emphasized by the bankruptcy court or the parties, one of the enrollment documents signed by Ms. Williamson, the Direct Deposit form, provides that the Participant (Ms. Williamson) "authorizes and directs the Financial Institution to refund any payments to the PARS Trustee to which the Participant or the Participant's successors or estate, would not have been entitled under the Plan as a result of the Participant's death or otherwise, and the same to the Participant's Account designated

(continued...)

4

reply or otherwise dispute any of the facts asserted by PARS.[5]

At the conclusion of a hearing on November 30, 2017, the bankruptcy court determined that the setoffs met the test for equitable recoupment and thus did not violate the stay. Accordingly, it denied the Motion. The bankruptcy court entered its order on December 6, 2017, and Ms. Williamson timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(1) and (b)(2)(O). We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Did the bankruptcy court err in concluding that PARS' postpetition deduction of retirement benefit overpayments from Ms. Williamson's monthly benefit constituted equitable recoupment?

## STANDARD OF REVIEW

We review de novo the bankruptcy court's application of undisputed facts to the law concerning equitable recoupment. *Aetna U.S. Healthcare, Inc.*

---

[4](...continued)
above. Both Participant and any co-tenant on the Participant Account agree on behalf of themselves, their heirs, executors, successors, and any trustee of his or he trust (if any) to reimburse the PARS Trustee for such payments."

[5] At the hearing on the Motion, the bankruptcy court noted that, because she had not filed a reply, Ms. Williamson had not disputed that she knew of the overpayment. On appeal, Ms. Williamson asserts that she was unaware that PARS had miscalculated her benefits. The bankruptcy court did not cite Ms. Williamson's knowledge or lack thereof as a basis for its ruling.

*v. Madigan (In re Madigan)*, 270 B.R. 749, 753 (9th Cir. BAP 2001) (citing *Sims v. U.S. Dep't of Health & Human Servs. (In re TLC Hosps., Inc.)*, 224 F.3d 1008, 1011 n.7 (9th Cir. 2000)).

## DISCUSSION

### A.    Equitable Recoupment

Equitable recoupment is similar to setoff in that each permits a creditor to deduct amounts owed to it by a debtor from amounts it owes to the debtor.  Nevertheless, the two doctrines "have differences with important consequences in the bankruptcy context."  *In re TLC Hosps., Inc.*, 224 F.3d at 1011.  Section 553 of the Bankruptcy Code preserves the right of a creditor to offset a prepetition debt it owes to the debtor against that creditor's prepetition claim.  Before exercising its right of setoff, the creditor must obtain relief from the automatic stay.  *See Citizens Bank of Md. v. Strumpf*, 516 U.S. 16, 19 (1995); § 362(a)(7). Section 553 does not permit setoff "across" the petition date; pre- and postpetition claims may not be offset.

Recoupment, on the other hand, is not provided for in the Bankruptcy Code.  Rather, it is a common law equitable doctrine which has been defined as "the setting up of a demand arising from the **same transaction** as the plaintiff's claim or cause of action, strictly for the purpose of abatement or reduction of such claim." *Newbery Corp. v. Fireman's Fund Ins. Co.*, 95 F.3d 1392, 1399 (9th Cir. 1996) (citation omitted)

(emphasis in original). Unlike setoff, recoupment is not subject to the automatic stay. *In re TLC Hosps., Inc.*, 224 F.3d at 1011. Additionally, recoupment "is not limited to prepetition claims and thus may be employed to recover across the petition date." *Id.* (citation omitted).

In determining whether two events are part of the same transaction, courts in the Ninth Circuit apply the "logical relationship" test, analogous to the test used to determine compulsory counterclaims, i.e., whether the counterclaim arises from the same aggregate set of operative facts as the initial claim. *In re Madigan*, 270 B.R. at 755; *see also Newbery Corp.*, 95 F.3d at 1399 (noting that recoupment has been analogized to both compulsory counterclaims and affirmative defenses). In this context, the word "transaction" is given a "liberal and flexible construction." *In re Madigan*, 270 B.R. at 755 (citations omitted). A transaction may include "a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship." *In re TLC Hosps., Inc.*, 224 F.3d at 1012 (quoting *Moore v. N.Y. Cotton Exch.*, 270 U.S. 593, 610 (1926)). In the final analysis, the obligations must be "sufficiently interconnected so that it would be unjust to insist that one party fulfill its obligation without requiring the same of the other party." *In re Madigan*, 270 B.R. at 755.

The bankruptcy court found that the logical relationship test was met because the debt to PARS and the benefits owed Ms. Williamson arose

from the same set of operative facts. Accordingly, PARS' offset of amounts it was owed by Ms. Williamson against her ongoing retirement benefits constituted equitable recoupment and did not violate the automatic stay. We see no error in the bankruptcy court's analysis or conclusion that the logical relationship test was met. The overpayment owed by Ms. Williamson and the benefits owed to her by PARS arose from the identical transaction and pension plan.

Ms. Williamson does not seem to dispute that the logical relationship test was satisfied here. Rather, she argues that the recoupment doctrine is an impermissible court-created exception to the automatic stay; that the cases permitting recoupment are distinguishable; and that California law prohibits offset of pension benefits. We find these arguments unpersuasive.

**B.    This Panel is bound to follow Ninth Circuit precedent.**

Ms. Williamson contends that the recoupment doctrine is an impermissible exercise of judicial authority that usurps Congress's power to pass bankruptcy laws. Her argument is that (I) Article I, Section 8, Clause 4 of the U.S. Constitution authorizes Congress to enact bankruptcy laws; (ii) federal courts have no power to create judicial exceptions to the automatic stay; and (iii) if Congress had intended recoupment to be an exception to the stay, it would have included such a provision in § 362(b). Ms. Williamson did not make this argument to the bankruptcy court, nor did she provide any authority for it in her opening brief. Thus we are not

obliged to consider it. *See Kaass Law v. Wells Fargo Bank, N.A.*, 799 F.3d 1290, 1293 (9th Cir. 2015).

In any event, we are bound to follow Ninth Circuit precedent unless that precedent is overturned by the Supreme Court. *Deitz v. Ford (In re Deitz)*, 469 B.R. 11, 22 (9th Cir. BAP 2012) (citing *United States v. Martinez-Rodriguez*, 472 F.3d 1087, 1093 (9th Cir. 2007)). As discussed above, equitable recoupment is an established doctrine in the Ninth Circuit, and if the logical relationship test is met, equitable recoupment does not violate the automatic stay.[6]

---

[6] In her reply brief, Ms. Williamson cited Judge Jury's concurrence in *Yellow Express, LLC v. Dingley (In re Dingley)*, 514 B.R. 591 (9th Cir. BAP 2014), *aff'd*, 852 F.3d 1143 (9th Cir. 2017), as support for her argument. The Panel in that case reversed the bankruptcy court's decision finding appellants in contempt for violating the automatic stay by continuing, postpetition, prosecution of a state court contempt proceeding for nonpayment of discovery sanctions. *Id.* at 600. In its decision, the Panel relied on *David v. Hooker, Ltd.*, 560 F.2d 412 (9th Cir. 1977), decided under the Bankruptcy Act, which recognized an exception to the automatic stay for state court contempt proceedings. In a concurrence, Judge Jury "reluctantly" joined the majority but opined that *Hooker*'s judicially-created stay exception was "not consistent with the modern breadth of the automatic stay espoused in Ninth Circuit case law and at odds with the plain language of § 362(b)." *In re Dingley*, 514 B.R. at 601 (Jury, J., concurring). Judge Jury went on to observe that applying such a rule effectively incorporated another exception into § 362(b), violating the Supreme Court's pronouncement that "[w]here Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent." *Id.* at 603 (citing *Andrus v. Glover Constr. Co.*, 446 U.S. 608, 616-17 (1980)).

The Ninth Circuit affirmed the Panel's decision on different grounds, holding that the conduct at issue fell within the statutorily enumerated exception to discharge for government regulatory actions (§ 362(b)(4)). *In re Dingley*, 852 F.3d at 1147-48.

(continued...)

**C.** **Recoupment is a recognized doctrine in the Ninth Circuit, which applies the "logical relationship" test to determine whether mutual debts arise from the same transaction.**

Ms. Williamson's next argument is difficult to decipher. The caption to this argument in her opening brief is "The Recoupment Doctrine is an Erroneous Law as a General Federal Rule." She argues that case law permitting recoupment in the bankruptcy context generally relates to federal government benefits and a federal statutory right to setoff or contracts providing for advance payments subject to future adjustment, and case law expanding the doctrine to other situations is in error.

Ms. Williamson cites *Lee v. Schweiker*, 739 F.2d 870 (3d Cir. 1984), as "an analogous circumstance." In *Lee*, the Third Circuit Court of Appeals held that the recoupment doctrine did not apply to the setoff of social security benefits against an overpayment to a debtor in bankruptcy. The court, citing non-Ninth Circuit case law, observed that recoupment was usually applied in the context of a contractual relationship but that social welfare statutes do not create contractual rights, but rather constitute a statutory entitlement whose purpose is to provide income to qualifying individuals. *Id.* at 875-76. *Lee*, however, is inapposite because the Third Circuit does not apply the logical relationship test—it applies a narrower

---

[6](...continued)
Judge Jury's concurrence does not state or imply that we should ignore binding Ninth Circuit precedent.

interpretation to the term "same transaction"than that utilized in the Ninth Circuit. *Newbery Corp.*, 95 F.3d at 1403; *In re Madigan*, 270 B.R. at 755-56. And in the Ninth Circuit, recoupment is not limited to the contractual context. *In re Madigan*, 270 B.R. at 758.

**D.    Case law in the Ninth Circuit supports the bankruptcy court's ruling.**

Ms. Williamson points out that in *Madigan*, cited by the bankruptcy court, the Panel held that recoupment was inapplicable, and she argues, without further explanation, that the analysis in *Madigan* "comports with general analysis by other courts about the very limited application the recoupment doctrine should have, if any." But *Madigan* is distinguishable. There, the Panel affirmed the bankruptcy court's denial of an insurer's claim for recoupment from the debtor of excess disability benefits. Although the benefits and overpayment arose from the same insurance policy, there were two reimbursement agreements, two disability periods, and two claims separated by a two-year period of employment and a bankruptcy. The Panel held that, under these facts, even if the claims for benefits arose from the same injury, the bankruptcy court properly applied the logical relationship test to deny recoupment. *In re Madigan*, 270 B.R. at 761.

Here, as noted, the pension benefits and overpayment arose from the identical transaction; thus, *Madigan* is factually inapposite.

11

**E. California law does not prohibit recoupment of retirement benefit overpayments.**

Ms. Williamson next argues that *Beaumont v. Department of Veterans Affairs (In re Beaumont)*, 586 F.3d 776 (10th Cir. 2009), cited by the bankruptcy court, is distinguishable. In *Beaumont*, the Tenth Circuit Court of Appeals upheld the bankruptcy court's decision finding that the Department of Veterans Affairs' post-discharge withholding of disability benefits from a debtor to recover an overpayment constituted equitable recoupment because the obligations arose from the same transaction. 586 F.3d at 777. According to Ms. Williamson, the key distinguishing fact is that this case involves pension benefits rather than military disability benefits and that under California law, pension benefits are not subject to recoupment because California law prohibits withholding of wages. She asserts, without authority, that "[i]t is axiomatic that pension benefits are deferred compensation."

Ms. Williamson then cites *California State Employees' Ass'n v. California*, 198 Cal. App. 3d 374 (1988), in which the California Court of Appeals held that the state's attachment and wage garnishment laws prohibited the state from making deductions from the salaries of state medical facility employees to recoup overpayments. *Id.* at 378. Ms. Williamson also cites California Labor Code § 221, which provides: "It shall be unlawful for any employer to collect or receive from an employee

12

any part of wages theretofore paid by said employer to said employee."

But Ms. Williamson is incorrect that California courts treat pension benefits the same as wages for purposes of recoupment. California cases involving pension benefits have upheld recoupment of those benefits in appropriate circumstances. *See Krolikowski v. San Diego City Emps.' Ret. Sys.*, 24 Cal. App. 5th 537, 557 (2018) (holding that recoupment of state pension benefit overpayment was not barred by statutes of limitations; exemptions for levy and attachment of public retirement benefits; equitable estoppel; or laches); *Oakland v. Oakland Police & Fire Ret. Sys.*, 224 Cal. App. 4th 210, 249 (2014) (Oakland Police and Fire Retirement Board not barred by equitable estoppel or laches from recouping benefits improperly paid to retirees).

We are unpersuaded by any of Ms. Williamson's arguments. The bankruptcy court did not err in concluding that PARS' withholding of her pension benefits constituted equitable recoupment.

## CONCLUSION

For the reasons explained above, we AFFIRM.